637 P.2d 837

**Ron ANDERSON, Plaintiff-Appellee,**

v.

**DAIRYLAND INSURANCE COMPANY, Defendant-Appellant.**

No. 13501.

Supreme Court of New Mexico.

Dec. 10, 1981.

Farlow, Simone & Roberts, LeRoi Farlow, Albuquerque, for defendant-appellant.

Sara J. Powell, Shannon Robinson, Ernesto J. Romero, Albuquerque, for plaintiff-appellee.

## OPINION

PAYNE, Justice.

Anderson purchased an automobile insurance policy from Dairyland Insurance Company (Dairyland) on July 15, 1977 through

an independent agent. Anderson requested three months' coverage. The agent erroneously calculated the premium which was sent with the application to Dairyland. Dairyland recomputed the premium, discovered the error, and issued a policy with a shortened coverage period to comply with the premium paid. The new period extended from July 15 to Sept. 24, 1977. It is uncertain whether Anderson received a copy of the policy with the new period specified, whether he received an expiration notice in September, and whether he received a lapse notice intended for the mortgagee of the vehicle. This lapse notice, allegedly sent on October 12, gives the mortgagee ten days' notice of expiration of coverage. On October 7, 1977, Anderson was injured in a one-vehicle accident. Dairyland paid the mortgagee the value of the truck less a $250 deductible. Dairyland then demanded that Anderson reimburse the company for this payment. Thereafter, Anderson filed suit against Dairyland for payment of his medical expenses and property damage arising from the accident, as well as punitive damages and attorney's fees. Anderson also alleged that after the collision his credit rating was adversely affected by several outstanding medical bills for injuries suffered in the collision. He was required to obtain co-signers on certain loans and was denied credit outright in March 1980. This credit impairment is the basis for a claim of tortious interference with contractual relations.

Dairyland denied liability under the policy on grounds that the term had expired. Dairyland further claimed that the medical bills exceeded its alleged liability in any case, and that the credit impairment was due to Anderson's refusal to pay the bills when he was fully capable of doing so. At trial before a jury, the court directed a verdict for Anderson on the insurance contract, finding that Dairyland was estopped from asserting those portions of its defense which arose from the agent's error. The jury awarded Anderson $1,200 for collision, $1,000 for medical coverage, $1,000 for interference with prospective contractual relations, and $10,000 punitive damages. The court also awarded $2,500 attorneys fees.

Dairyland appeals the entire judgment. Anderson appeals the award of attorneys fees as inadequate.

I.

We have previously held that the doctrine of estoppel may apply in situations where an insured relies on the representations of the insurer's agent. *Pribble v. Aetna Life Insurance Company,* 84 N.M. 211, 501 P.2d 255 (1972); *see also King v. Travelers Insurance Company,* 84 N.M. 550, 505 P.2d 1226 (1973). Those cases involved a different type of fact situation but set forth the basis for the rule of law we apply here. Insurance policies are notoriously complex. Contracts for insurance are often entered into based upon an agent's representations and without having a policy to examine until later. Estoppel is a proper theory for preventing abuses arising from misrepresentations and mistakes but it should not be applied to prevent an insurer, having discovered an error, from correcting the error where the insured is adequately and fairly notified of the change.

The facts in the present case raise questions as to whether Anderson ever received a copy of the policy or other documents, and whether reasonable examination of such would have alerted him to the reduced period. Facts were asserted in this case from which a jury could find that Anderson did receive such documents and that reasonable examination of them would have alerted him to the reduced period. Of course, the reasonable reliance on the agent's representations is a factor in determining the extent of Anderson's duty to examine. *See Pribble, supra.* If a jury finds that Anderson could reasonably have relied on the agent's representations and therefore not read documents received from Dairyland, then it is irrelevant whether Anderson received any documents. This is a factual determination, however. We cannot uphold a directed verdict based on estoppel unless the evidence could only show that plaintiff himself has met his duty to

reasonably inspect documents received from the insurer which might have alerted him to the new terms. The case is remanded for jury consideration of this issue.

■ Plaintiff's Requested Instruction No. 7, which was not given because of the directed verdict, fairly represents our view of the law. It states:

The responsibility for a mistake in the compilation of an insurance premium, not due to a misrepresentation of an insured, is upon the insuror, when the insured is not made aware of the mistake until a claim on the insurance policy is made.

## II.

■ Dairyland objects to the submission of the issue of punitive damages to the jury. We agree that here, where the verdict as to liability for compensatory damages was improperly directed, giving an instruction on punitive damages was inappropriate. The Court of Appeals discussed the application of punitive damages to actions against insurers in *Crawford v. American Employers' Insurance Co.*, 86 N.M. 612, 526 P.2d 206 (Ct.App.1974), *rev'd on other grounds,* 87 N.M. 375, 533 P.2d 1203 (1975). There, the insurer knew, two and one-half years before trial, that a serious question of coverage existed, but failed to so inform the insured. "Although the actions of the Insurer could be characterized as entirely self-interested they do not rise to the level of being 'maliciously intentional, fraudulent, oppressive, or committed recklessly or with a wanton disregard of the Plaintiff's rights.'" *Id.*, 86 N.M. at 621, 526 P.2d at 215. Not all actions taken by an insurer to the detriment of its insured justify punitive damages. The only case cited by Anderson which allowed punitive damages in a situation at all similar to the instant case is *Curtiss v. Aetna Life Ins. Co.*, 90 N.M. 105, 560 P.2d 169 (Ct.App.) *cert. denied,* 90 N.M. 7, 588 P.2d 619 (1976). There, the insurer refused to pay under a valid oral contract of insurance because the plaintiff was unable to take a physical examination, due to his being in the hospital recovering from a heart attack suffered after the contract became effective.

This evidence falls within the meaning of the words "willful", "wanton" or "malicious" conduct. Defendant intentionally refused to pay *without just cause or excuse* because it declined plaintiff's application after plaintiff suffered a heart attack, knowing that plaintiff could not take a physical examination. [Emphasis added.]

*Id.* at 109, 560 P.2d at 173

■ We decline to hold as a matter of law that Dairyland's actions in this case would not support an instruction on punitive damages. However, the trial judge, in determining whether to submit the issue to the jury, should consider whether the insurer had a reasonable basis for its failure to pay the claims.

Since we have concluded that the instruction given on punitive damages was inappropriate, we reverse and remand for further proceedings in light of our disposition of the first issue presented.

## III.

■ Dairyland asserts that the trial court should have dismissed Anderson's claim for interference with contractual relations. We agree.

American courts are not as willing to protect interests in prospective contractual relations as they are to protect interests in existing contracts. Where the defendant is accused of interfering with the plaintiff's opportunity to enter into contracts with third persons, a strong showing must be made that the defendant acted not from a profit motive but from some other motive, such as personal vengeance or spite.

J. Henderson & R. Pearson, The Torts Process 1166 (2d ed. 1981). This statement fairly represents our views on the question.

■ The first and only New Mexico case dealing with interference with prospective contractual relations was *M & M Rental Tools, Inc. v. Milchem, Inc.*, 94 N.M. 449, 612 P.2d 241 (Ct.App.1980). In that case, the Court of Appeals adopted the approach tak-

en by the Restatement (Second) of Torts § 766B (1979). This approach, with which we agree, requires intentional and improper interference. In other words, "either an improper motive (solely to harm plaintiff), or an improper means is required for liability." *Milchem, supra,* at 454, 612 P.2d at 246. The plaintiff has the burden of proving the interference was improper. *Id.* at 455, 612 P.2d at 247. Anderson did not meet his burden in this case.

■ Referring to the comments under Section 766B of the RESTATEMENT, *supra,* Anderson correctly points out that whether a defendant has the necessary intent and purpose to create an actionable interference with a prospective contractual relation is a question of fact. However, in any case where a plaintiff has proved interference with prospective contractual relations, the factors set out in Restatement (Second) of Torts § 767 (1979) which relate to determining whether an interference is "improper" should be considered to the extent they apply. Indulging every inference in Anderson's favor, we cannot find any indication that Dairyland acted out of improper motive or out of "personal vengeance or spite." *Henderson, supra.*

■ Even assuming that Dairyland's refusal to pay was a proximate and foreseeable cause of Anderson's unfavorable credit rating, and that Dairyland acted in bad faith, there is no proof that the impairment of credit did not result from Anderson's own refusal to pay the medical bills. Anderson's complaint alleges medical expenses of $7,000, yet the only unpaid bills which were proved to have appeared in Anderson's credit file totalled $458.17. There is no proof that any insurance benefits received would have been applied toward those bills which turned up in the credit file rather than toward the other, larger outstanding bills. Furthermore, there is no indication that Anderson could not have paid off the bills pending resolution of the case. To the contrary, uncontroverted evidence indicates that he was capable of paying the bills but refused to do so. It is a basic rule that the defendant must be shown to have caused the interference. W.

Prosser, The Law of Torts 934 (4th Ed. 1971). We cannot uphold a claim for interference with prospective contractual relations where it is not clear that the plaintiff himself has not caused the interference. Where the claim is based on an indirect interference such as that alleged here, the plaintiff must clearly show that his own action or inaction did not constitute interference. In other words, Anderson must prove that there was an actual prospective contractual relation which, but for the insurer's interference, would have been consummated. This Anderson has failed to show.

Since this claim should have been dismissed because Anderson did not meet his burden of proof, it is unnecessary for us to discuss the admissibility of expert testimony on the question of damages caused by the impaired credit rating. Nor need we discuss the other evidentiary matters raised.

### IV.

Since an award of attorneys fees under Section 39–2–1, ·N.M.S.A.1978, requires a finding that the insurer acted unreasonably in failing to pay the claim, we vacate the award and remand pending the result of the new trial.

IT IS SO ORDERED.

FEDERICI and RIORDAN, JJ., concur.