642 P.2d 205

Thomas E. SPEER, D.C. Chartered, A New Mexico Professional Corporation, Plaintiff-Appellee,

v.

Marion CIMOSZ, Ralph Marquez, Defendants

and

New Hampshire Insurance Group, Defendant-Appellant.

No. 5245.

Court of Appeals of New Mexico.

Feb. 4, 1982.

Writ of Certiorari Denied March 18, 1982.

M. Rick Beitler, W. Mark Mowery, Rodey Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendant-appellant.

Elvin Kanter, P.A., Albuquerque, for plaintiff-appellee.

## OPINION

WALTERS, Chief Judge.

This appeal stems from a jury verdict against New Hampshire Insurance Group (New Hampshire), the workmen's compensation carrier for the respective employers of defendants Cimosz and Marquez. The case against New Hampshire was submitted to the jury on two theories: breach of contract, and interference with contractual relations. In eight points, New Hampshire urges on appeal that it should have been granted a directed verdict because there was insufficient evidence to allow either theory of its alleged liability to go to the jury or to support the verdict; that the jury instructions regarding elements of the tort of interference and damages recoverable were erroneous; that the verdicts in favor of defendants Cimosz and Marquez and against New Hampshire were inconsistent, and that the trial court erred in denying New Hampshire's pretrial motions to sever and dismiss. We affirm.

*Facts.*

In October 1978 and January 1979, plaintiff Speer, a chiropractor, treated defendants Cimosz and Marquez for injuries admitted by New Hampshire to have been covered under the Workmen's Compensation Act. On July 18, 1979, counsel for Dr. Speer demanded payment from Cimosz and Marquez for Dr. Speer's services, but informed them that Dr. Speer "would be willing to wait a reasonable time if you initiated and diligently prosecuted a workmen's compensation claim. * * *"

New Hampshire wrote to Cimosz and Marquez on August 8, 1979, advising them to be "100% assured [that] this company assumes the responsibility of payment of reasonable medical treatment rendered to you in connection with the [compensable injuries]" and that "in the event suit is filed against you, the company will provide a complete defense of any action through the offices of the Rodey Law Firm here in Albuquerque." It explained to those defendants that Dr. Speer's bills had not been paid because the company considered them unreasonable. Copies of the letters to the individual defendants were sent to plaintiff's counsel. When payment was not forthcoming, plaintiff sued his patients-defendants and the compensation insurer for failure to pay for his services, and alleged a separate count against New Hampshire for its interference with the contractual relationship between plaintiff and the individual defendants.

After trial, the jury returned a general verdict in favor of defendants Cimosz and Marquez and against defendant New Hampshire for the value of medical services rendered by plaintiff, plus costs.

## I.

We first respond to appellant's arguments that its pretrial motions were improperly denied. One dealt with its contention that, since plaintiff's attorney fees were paid through the Chiropractic Legal Fund, the complaint should have been dismissed because its filing violated that policy of the State against "officious intermeddling in a suit which in no way belongs to one, by maintaining or assisting either party with money or otherwise, to prosecute and defend it." New Hampshire relies on the criminal statute of barratry, § 30–27–3 A, N.M.S.A.1978, to state a public policy forbidding one who has "no legally enforceable interest in a lawsuit to intermeddle in such action."

It appears from the portion of the transcript concerned with the hearing on this motion that Dr. Speer was a member of a group of chiropractors who created a fund for payment of legal expenses of its members. Under the conditions of Rule 2–103(D)(4), Code of Professional Responsibility, N.M.S.A.1978 (Supp.1981), a lawyer may provide services to a member or beneficiary of such a funded organization and he may

receive his fee from the organization. We are not provided with any evidence or citations to the record which would indicate that there was a violation of Rule 2–103. Even if there were such evidence, in our opinion the matter would more appropriately be referred to the Disciplinary Board of the State Bar than to the trial court as the basis of a motion to dismiss.

■ Regarding the suggestion that payment from such a fund destroys Dr. Speer's status as a bona fide plaintiff, there can be no question that the claim stated was made by Dr. Speer, the real party in interest, N.M.R.Civ.P. 17(a), N.M.S.A.1978. In these days of prepaid insurance plans for hospital, medical, dental, as well as legal and innumerable other services, it would be as ludicrous to say that, on the record before us, the Chiropractic Legal Fund was counsel's client as to pretend that an insurance company that pays one's medical bills is the doctor's patient. Refusal to grant the motion to dismiss was not error.

On the denial of New Hampshire's other pre-trial motion, to sever, appellant claims that allowing the jury to consider potential liability of all defendants in the same trial "obviously left the jury totally confused as to the nature of the claims being made and what the jury was expected to determine with respect to each claim." An additional argument is made that "the risk of prejudice to defendants Cimosz and Marquez by the presence of an insurance company as a co-defendant was sufficient in and of itself to require severance."

■ We consider both arguments unsound. Granting severance is discretionary with the trial judge, N.M.R.Civ.P. 42, N.M. S.A.1978. In this case, the jury was carefully instructed regarding plaintiff's theories; there is nothing in the verdict to indicate that it misunderstood the claims or the matters to be determined. *See Britton v. Boulden*, 87 N.M. 474, 535 P.2d 1325 (1975). With respect to the claim of prejudice to the individual defendants, it is significant that they have not appealed. How their prejudice, if any, might redound to appellant's advantage on appeal is not elucidated

or argued. *Yoakum v. Western Cas. & Sur. Co.*, 75 N.M. 529, 407 P.2d 367 (1965), is illustrative of the general rule that alleged error must be personal to the appellant to merit review on appeal. There is no basis for reversal of this judgment on grounds that the pre-trial motions should have been granted.

## II.

New Hampshire insists that instructions governing plaintiff's theory of breach of a contract between plaintiff and New Hampshire should never have been given because there were no facts "which could possibly give rise to such [a] claim."

■ Plaintiff's first amended complaint states alternative claims of liability, joining New Hampshire in Count I with the individual defendants for their respective alleged obligations to pay Dr. Speer's bills. The complaint perhaps was not as clearly drawn as it could have been. Nevertheless, there is no doubt that ample evidence was adduced at trial to permit the jury to find that New Hampshire promised to perform for Cimosz and Marquez when it assured them that it would be responsible for payment of reasonable medical treatments necessitated by their work-related injuries. *See* Restatement of Contracts (Second), § 280, Comment c. Although the Workmen's Compensation Act imposes the obligation for payment of reasonable medical treatment to an injured workman on the employer-insurer, § 52–1–49, N.M.S.A.1978, that obligation is to the workman, not to the treating physician. The initial contract for medical services here was between the patients and their doctor. New Hampshire's letter of August 8, 1979, triggered by plaintiff's demand for payment from the workmen, provided the jury with evidence from which it properly could have found that New Hampshire effectively assumed responsibility for such payment and, through its notice to plaintiff's attorney, notified plaintiff that it substituted itself as the obligor on the doctor-patient contracts.

Appellant points to a pre-trial order dismissing any third-party beneficiary claim plaintiff initially may have asserted, as proof that New Hampshire could not have been held on a contract theory. The argument is spurious; if there was a substitution of the responsible parties, New Hampshire became directly, not derivatively, obligated to plaintiff. No "third-party beneficiary" claim was presented by the evidence or in the instruction of the jury.

Submission of the contract theory to the jury was not error.

### III.

As a second ground for appellants' liability, plaintiff claimed that New Hampshire, by its August 8th letters, interfered with the duties of Cimosz and Marquez to pay for the services rendered to them by plaintiff. New Hampshire does not deny that the letters were instrumental in effectively inducing Cimosz and Marquez not to pay their bills; it says that plaintiff failed to prove that the letters were written "solely to harm plaintiff." Thus, it argues, the jury should not have been instructed regarding liability for interference with contractual relations. Additionally, and on the same reasoning, it contends it was entitled to a directed verdict on that count.

■ New Hampshire misreads *M & M Rental Tools, Inc. v. Milchem, Inc.*, 94 N.M. 449, 612 P.2d 241 (Ct.App.1980), upon which it rests this argument. *Milchem* discussed the tort of interference with a prospective contract; the opinion clearly indicated, at 94 N.M. 452, 612 P.2d 241, that the court considered that tort distinguishable from the tort of interference with an existing contract. The recent case of *Anderson v. Dairyland Ins. Co.*, 97 N.M. 155, 637 P.2d 837 (1981), particularly notes that rights injured by interference with an existing contract are more readily protected than if the contract is only prospective. *Williams v. Ashcraft*, 72 N.M. 120, 381 P.2d 55 (1963), and *Wolf v. Perry*, 65 N.M. 457, 339 P.2d 679 (1959), state the law on the tort of interference with an existing contract. The court, in *Williams*, held that if the interfer-

ence is "without justification or privilege," the one interfering is subject to liability. *Wolf* is to the same effect. "Privilege" was defined as a good faith assertion or threat by the one interfering to protect a legally-protected interest of his own which he believes might otherwise be impaired or destroyed by performance of the contract. *Williams, supra*, at 72 N.M. 122, 381 P.2d 55.

■ The prospect of New Hampshire's loss of the "right" to pay Marquez's and Cimosz's medical bills if it had not injected itself into the contracts between plaintiff and those defendants, by its letters, is an anticipated injury "full of sound and fury, signifying nothing." We note that New Hampshire *did not* pay the medical bills it had the "right" to pay, but chose instead to contest the necessity and reasonableness of them. That, too, was a matter that might have been a battleground between New Hampshire and the individual defendants had defendants sought payment of medical benefits under the Workmen's Compensation Act, but it was not a decision for New Hampshire to make regarding the extent of Cimosz's and Marquez's obligations to plaintiff under their contracts for treatment by plaintiff.

■ In answer to appellant's contentions that the instructions on interference were incomplete because they did not specify "improper" interference, and did not instruct that "the defendant played an active and substantial part in causing the plaintiff to lose the benefits of his contract," we express our satisfaction that a reading together of all the instructions adequately apprised the jury of plaintiff's claims regarding appellant's conduct, and correctly advised it that plaintiff had the burden of proving those claims. *See Bailey v. Jeffries-Eaves, Inc.*, 76 N.M. 278, 414 P.2d 503 (1966). To instruct that one may be held liable for interference not justified or privileged inescapably conveys the stamp of impropriety on such conduct; indeed, the definition of "unjustifiable" is "lacking in propriety or justice." Webster's Third New International Dictionary (1976 ed.). We do

not assume that the jury is totally ignorant of the meaning of common words.

We conclude, therefore, that the evidence sustained the claim of interference and the jury was not erroneously instructed thereon.

### IV.

The instruction on damages for interference told the jury that in addition to the reasonable value of plaintiff's services, the jury could award interest on that amount from date of service to trial. New Hampshire attacks the interest portion of the instruction, arguing that if interest were allowable it could apply only from the date of interference.

■ We need not belabor the issue. The verdict was for ten dollars less than the total of the medical bills introduced into evidence. Dr. Speer testified that $10.00 should have been deducted for a substandard x-ray. Thus, the evidence supported the exact amount returned as reflecting that only the medical expenses were allowed; the amount of the verdict plainly shows that no interest was added. We will not speculate that the jury reduced the medical amounts claimed and thereupon added some percentage of interest to reach its verdict of damages, as appellant suggests. Every *reasonable* presumption and inference in support of the verdict will be indulged. *Durrett v. Petritsis*, 82 N.M. 1, 474 P.2d 487 (1970).

Since we are satisfied that no interest was awarded, New Hampshire was not prejudiced by the damage instruction.

### V.

■ New Hampshire's last challenge asserts that if we assume it was found liable for interference with contractual relations, that verdict is inconsistent with the verdicts in favor of Cimosz and Marquez on the breach of contract claims against them. It argues that the jury must have "determined that there was no contract" between plaintiff and those defendants.

We have already determined that the jury could have rendered its judgment against New Hampshire on a finding of substituted contracts or interference with the Cimosz and Marquez contracts.

The jury's exoneration of Cimosz and Marquez lends itself to the more probable finding of New Hampshire's liability under the substituted contract theory. We need not be concerned, however, about the jury's basis for a verdict that was properly reached under either of the counts against this appellant. Nor may we go behind a valid verdict to invalidate it by assuming that the jury acted inconsistently. *Cf. United Nuclear Corp. v. General Atomic Co.*, 93 N.M. 105, 597 P.2d 290 (1979).

This final point is also without merit. The judgment is affirmed.

HENDLEY and LÓPEZ, JJ., concur.