785 P.2d 726

Roger SCHMITZ, Plaintiff,

v.

Leo R. SMENTOWSKI and Keith Mock and Opal Mock, Defendants,

v.

COLORADO NATIONAL BANK–EX-CHANGE,
Cross–Defendant–Appellant,

v.

Keith MOCK and Opal Mock,
Cross–Claimants–Appellees,

v.

Leo R. SMENTOWSKI and Marcella Smentowski, Cross–Defendants.

No. 17975.

Supreme Court of New Mexico.

Jan. 10, 1990.

Beck & Cooper, Robert O. Beck, Clayton, Ross & O'Brien, P.C., Richard G. Gilloon, Colorado Springs, Colo., for appellant.

Kastler and Kamm, Paul A. Kastler, John William Clever, Raton, Charles D. Alsup, Clayton, for appellees.

## OPINION

BACA, Justice.

This is an appeal from the judgment of the district court of Union County of a jury verdict in favor of appellees, cross-claimants below, the Mocks, against appellant, cross-defendant below, the Colorado National Bank–Exchange (the Bank). This case has presented us with multiple claims and asks us to consider an issue of first impression in this jurisdiction.

The Bank contends that the trial court erred in allowing judgment based on a theory of prima facie tort, arguing that we should not recognize the cause of action; that the Mocks did not demonstrate that the Bank was motivated solely by disinterested malevolence as required in a prima facie tort action; that the elements of prima facie tort were improperly pleaded and proved; that the Bank as a holder of a promissory note could not have been found negligent with regard to that note as a matter of law; that the resulting trust under which the note was held could not affect the Bank's right to that note; that the court abused its discretion by allowing the Mocks to amend their complaint to include prima facie tort, and that this abuse violated the Bank's due process rights. The Mocks, in turn, maintain that the Bank did not properly preserve its allegations for appeal, that they in fact are the rightful claimants of the note, and that they properly pleaded and proved their theory of prima facie tort. We agree with the Mocks' substantive claims and affirm the judgment below.

FACTS.

In 1979, the Mocks purchased two adjacent ranches from the Pogues and the Edmondsons (neither party is involved in this suit) as part of a three-party land exchange effectuated pursuant to Section 1031 of the Internal Revenue Code, I.R.C. § 1031 (1969), whereby they sold a feed lot and farm to Schmitz, plaintiff below, in exchange for cash and a promissory note in the amount of $230,000. The Pogues received the cash as payment in full, while the Edmondsons were paid in part in cash, with the balance in the form of a note payable in annual installments of $35,838.66. Pursuant to the exchange, the Mocks received deeds to and possession of the two ranches; Schmitz received deed to and possession of the feed lot; the Pogues were paid in full, and Schmitz owed the Mocks $230,000 represented by the note. The note was made payable on its face to Smentowski, an accountant acting as strawman to facilitate the three-way tax-free exchange of property. Smentowski had no personal interest in the note. He held legal title in trust for the true parties in interest. The Mocks gave Edmondsons a first mortgage in their newly acquired ranch to secure their $230,000 debt on the property; the payments on the note received by Smentowski from Schmitz were paid directly to the Edmondsons to cover the mortgage payments.

In 1981, Smentowski received a loan from the Bank. The Bank took possession of the note, so that the Smentowski loan would appear to bank examiners to be

backed by more collateral than it in fact was. The evidence indicates that all parties to the transaction, including the Bank; had actual knowledge that Smentowski did not have any beneficial interest in the note —thus, the Bank knew that it had no interest in the note as collateral and that others had claims and defenses to the note. However, despite this knowledge, in 1986, when Smentowski defaulted on his loan, the Bank attempted to collect the balance due on the note from Schmitz. The Bank notified Schmitz of Smentowski's default and requested that he direct future payments on the note into the court. Edmondsons thus did not receive their mortgage payments; they accelerated the mortgage and threatened foreclosure against the Mocks. The Mocks were forced to borrow on their cattle line of credit to prevent foreclosure, and this prevented them from using the line of credit to pursue their business of cattle raising.

Schmitz named Smentowski, the Bank, and the Mocks as defendants in his interpleader suit. The Mocks responded, filing cross-claims against Smentowski in gross negligence and fraud, and against the Bank in negligence. They subsequently amended their complaint against the Bank to include theories of fraud and conspiracy to defraud. On the morning of trial, the Mocks requested leave to amend their cross-claims to include theories of resulting trust and prima facie tort. The court allowed the resulting trust theory and reserved judgment on the prima facie tort. Subsequently, toward the end of Mocks' case, they moved to amend their pleadings to conform to the evidence, and the court allowed the prima facie tort theory.

The trial court directed a verdict against Smentowski, ruling he was a fiduciary holding title to the note in a resulting trust. The court also ruled against the Mocks on their conspiracy claim. The jury found the Bank was a mere holder of the note, not a holder in due course, and thus took the note subject to claims and defenses against it. The jury also found for the Mocks on their negligence and prima facie tort claims, awarding them the note and punitive and compensatory damages.

The Bank and the Mocks have raised several threshold issues, which we must resolve before reaching the substantive issues presented regarding the prima facie tort claim. The Bank claims that the district court violated its procedural due process rights and abused its discretion by allowing the Mocks to introduce the tort claim through amended pleadings late in the trial. The second threshold issue is raised by the Mocks, who claim that the Bank is precluded from pursuing its various points on appeal because it did not include them in their docketing statement. We address each issue in turn.

## I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION OR VIOLATE THE BANK'S DUE PROCESS RIGHTS BY ALLOWING THE MOCKS TO PROCEED ON THE THEORY OF PRIMA FACIE TORT.

### A. *Abuse of Discretion.*

The Bank contends that the trial court abused its discretion by allowing the Mocks to amend their complaint at trial to conform to the evidence and to reflect their prima facie tort theory, relying on SCRA 1986, 1–015(B). It claims it did not expressly or impliedly consent to try the theory; it objected to the motion to amend and to subsequent jury instructions on prima facie tort; it was surprised by the theory and had no notice of it prior to trial and therefore was prejudiced because it could not defend properly.

The theory of pleadings is to give the parties fair notice of the claims and defenses against them, and the grounds upon which they are based. *Seasons, Inc. v. Atwell*, 86 N.M. 751, 753, 527 P.2d 792, 794 (1974). It is true that, before a party may take a case to a jury on a particular theory, that theory must have been pleaded, or tried with the consent of the opponent. *Ciesielski v. Waterman*, 86 N.M. 184, 186, 521 P.2d 649, 651 (Ct.App.), *rev'd on other grounds*, 87 N.M. 25, 528 P.2d 884 (1974). However, notice pleading does not require that every theory be denominated in the pleadings—general allegations of conduct

are sufficient, as long as they show that the party is entitled to relief and the averments are set forth with sufficient detail so that the parties and the court will have a fair idea of the action about which the party is complaining and can see the basis for relief. *Id.; Kisella v. Dunn*, 58 N.M. 695, 700, 275 P.2d 181, 186 (1954); *see* SCRA 1986, 1–008.

■ The Mocks, in their original pleadings, stated the essential elements of prima facie tort as an alternative cause of action with sufficient particularity to give the Bank notice of their theory—our system of notice pleading does not require more. Although perhaps not as artful as would be hoped for, the pleadings outline the elements necessary to prove prima facie tort, by alleging:

(1) that the Bank had knowledge of Smentowski's strawman status;

(2) that the transfer of the note to the Bank was wrong because the Bank knew it had no interest in the note;

(3) the Bank accepted the note with knowledge that the Mocks would be injured;

(4) the Mocks were injured by the Bank's acts.

This recital is sufficient, as a bare minimum, to give notice that the Mocks were complaining of a lawful act, conducted with the intent to injure and without sufficient economic or social justification, that did injure them, i.e. a prima facie tort. *See Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F.Supp. 1084, 1087 (S.D.N.Y.1988); *Porter v. Crawford & Co.*, 611 S.W.2d 265, 268 (Mo.Ct.App.1980).

It is insufficient for the Bank to complain that they did not recognize the theory underlying the allegations, and, in fact, they were apprised of the Mocks' theory before the trial began.

In the present case, although we recognize that the Mocks' initial pleadings were not a model of clarity, we are convinced that they adequately presented the elements of prima facie tort. The Bank did not object at trial to the introduction of evidence, and yet it claims that it did not

consent to the theory and was prejudiced by the amendment. Simply because the Bank did not recognize the prima facie tort claim is not grounds for a finding that the court abused its discretion. However, because of the novelty of the prima facie tort claim and in the interest of justice, we have examined the Bank's claim of prejudice, and we find that the Bank vigorously defended the issues pertaining to the prima facie tort claim and was not prejudiced.

Leave to amend pleadings should "be freely given when justice so requires." SCRA 1986, 1–015(A). Amendments are within the trial court's discretion and will be reversed on appeal only for abuse of discretion. *Montano v. House of Carpets, Inc.*, 84 N.M. 129, 130, 500 P.2d 414, 415 (1972). Amendments to conform the pleadings to the evidence should be allowed when the issues are tried by the express or implied consent of the parties. SCRA 1986, 1–015(B); *Csanyi v. Csanyi*, 82 N.M. 411, 412, 483 P.2d 292, 293 (1971). Even if the party has not consented to amendment, a trial court is required to allow it freely if the objecting party fails to show he will be prejudiced thereby. SCRA 1986, 1–015(B); *Wynne v. Pino*, 78 N.M. 520, 523, 433 P.2d 499, 502 (1967).

The Bank argues that, although issues and evidence relating to the prima facie tort may have been presented at trial, the evidence was relevant to the claims initially pleaded by the Mocks, fraud and negligence, and was only incidental to the prima facie tort cause of action. As such, the Bank maintains that it cannot be charged with impliedly consenting to the theory.

■ Courts have found that, although evidence is not objected to at trial, there is no implied consent to a new theory or issue when the evidence is relevant to other pleaded issues, *see Moya v. Fidelity & Cas. Co.*, 75 N.M. 462, 406 P.2d 173 (1965); *Wynne v. Pino*, 78 N.M. at 523, 433 P.2d at 502, and have determined that the amendment should not be allowed if the opposing party has been prejudiced by the amendment. *See Camp v. Bernalillo County Medical Center*, 96 N.M. 611, 613, 633 P.2d

719, 721 (Ct.App.1981) (finding prejudice when the party was not allowed to present evidence that would have rebutted the moving party's theory as later presented in the amended complaint). We agree with the Bank that they did not consent to the trying of the case on a prima facie tort theory, and we proceed to determine whether in fact the Bank was prejudiced by the amendment.

The test of prejudice is whether the party had a fair opportunity to defend and whether it could offer additional evidence on the new theory. *Id.* Prejudice means undue difficulty in prosecuting the suit because of the change in theory. *Deakyne v. Comm'rs of Lewes,* 416 F.2d 290 (3d Cir. 1969).

The Bank initially claims prejudice because it had no notice of Mocks' theory and could not present evidence of economic self interest, profit motive and business advantage as a defense. It also contends that the Mocks had to show that the Bank was motivated solely by disinterested malevolence, and the Bank was prejudiced because it was unable to contest this element. As our discussion of the elements of prima facie tort, *infra,* shows, the Bank states the elements too strongly, but we also find that the Bank did present such evidence. Throughout the trial, the Bank attempted to demonstrate that it was only acting out of its own interest in moving against the note. However, the evidence also demonstrates that the jury could find that, in ruthlessly and recklessly pursuing its own interest, the Bank acted with disregard for the interests of others and should have known that its actions would inflict injury. This adequately fits within the contours of a New Mexico prima facie tort.

The Bank argues that it was prejudiced because it was unable to gain the knowledge that punitive damages *may* not be available under prima facie tort. The Bank, however, does not direct the court to any authority stating that punitive damages *are* not available, citing only *Brown v. Missouri Pacific Ry. Co.,* 720 S.W.2d 357 (Mo.1986), *cert. denied,* 481 U.S. 1049, 107 S.Ct. 2180, 95 L.Ed.2d 836 (1987), which found it unnecessary to address the issue of punitive damages. Our research indicates that punitive damages are contemplated under prima facie tort. *See* Restatement (Second) of Torts § 870 comment m (1977). Because we see no reason why punitives should not be available, we find no prejudice to the Bank on this point.

The Bank claims prejudice because it did not know that a prima facie tort claim must be exclusive and that no established tort theory can be available. However, the evidence shows that the Mocks did not have any other tort claim available upon which they could recover, and consequently there was no prejudice.

The Bank also contends that a prima facie tort theory requires that the act complained of must be otherwise lawful, and it was prejudiced because it was unable to develop evidence to contest this element. We find it hard to believe that the Bank is now claiming that its actions in moving against the note were unlawful and therefore they should be relieved of their tort liability because they were prejudiced in being unable to present such evidence. In any case, courts considering prima facie tort claims have determined that this requirement merely restates the issue discussed above, that the plaintiff can have no other tort theory available to support recovery, and we therefore find the Bank was not prejudiced by this claim. *See Bandag of Springfield, Inc. v. Bandag, Inc.,* 662 S.W.2d 546, 554 (Mo.Ct.App.1983).

Lastly, the Bank argues that it was prejudiced because it could not develop evidence for the balancing approach we adopt today in determining whether an act complained of can be determined tortious as a matter of law before the facts are submitted to the jury. The judge must engage in the balancing process and apply the factors discussed *infra* to determine whether liability in tort will exist for the type of injury complained of. Restatement (Second) of Torts § 870 comment k (1977). The jury then applies the standards developed by the court to the facts it finds. *Id.* We find that the trial judge did engage in this balancing test, that the factors to be

considered were fully developed at the trial, and therefore the Bank was not prejudiced.

■ Thus, we hold that the Bank was not prejudiced by the pleading amendment. The Mocks pleaded with sufficiency to give the Bank notice of its claim, and, in any case, the Bank was not prejudiced by the amendment to conform to the evidence.

### B. *Due Process.*

■ The Bank contends that the trial court, by allowing the trial amendments, violated its procedural due process rights, as guaranteed by the United States and New Mexico Constitutions. *See* U.S. Const. amend. V, XIV; N.M. Const. art. II, § 18. In essence, the Bank argues that due process requires regular procedures to ensure fairness, that there was no state interest in allowing the Mocks to amend their complaint, that the Bank had no notice of the Mocks' heretofore unrecognized theory, and thus its fundamental right to reasonable notice and a fair opportunity to defend was violated.

The Bank's argument falls on a variety of grounds, the most obvious being that it was not denied process—it participated in a full trial, with every opportunity to be heard, and with fair procedures. The trial court considered the Bank's arguments against the Mocks' amendment, and found them unpersuasive. We have already held that the court did not abuse its discretion in allowing the amendments; in other words, we have determined that the ruling was fair. We are at a loss to understand how much more process the Bank feels it is due. *See In re Miller*, 88 N.M. 492, 497–98, 542 P.2d 1182, 1187–88 (Ct.App.1975), *rev'd on other grounds*, 89 N.M. 547, 555 P.2d 142 (1976).

### II. THE BANK PROPERLY PRESERVED ITS RIGHT TO APPEAL.

■ The Mocks contend that the Bank did not preserve its right to claim error on appeal because it did not raise the issues in its docketing statement. Although the court of appeals requires a docketing statement as a jurisdictional matter for perfect-

ing appeals, this court does not. "It is within our discretion to consider error preserved below and presented in appellant's brief after having been omitted from the docketing statement." *Gallegos v. Citizens Ins. Co.*, 108 N.M. 722, 731, 779 P.2d 99, 108 (1989). The docketing statement is not jurisdictional to this court. *Id.* Thus, we will consider the substantive issues raised on this appeal.

### III. THE BANK'S CLAIM TO THE NOTE AS A HOLDER.

The Bank makes several claims to the note. It claims that, as a holder of the note, it cannot be liable on the note for negligence, and it contends that the trial court erred in not directing a verdict in its favor on this point. It also contends that the court erred in finding that, if the Bank was found by the jury not to be a holder in due course, the Mocks would be entitled to the note because of the resulting trust. We address each issue in turn.

### A. *Negligence.*

■ The Bank argues that the U.C.C. allows a holder to be negligent in taking a negotiable instrument and refers us to several cases regarding holder in due course status. It is true that a holder in due course can attain that status despite his negligence in taking the instrument. He is only required to take for value, in good faith, and without notice of claims or defenses. NMSA 1978, § 55–3–302(1). It is true that good faith as used in the relevant sections of the U.C.C. is a subjective standard and requires actual knowledge of a claim or defense for the status of holder in due course to be lost (although a jury may find from the facts and circumstances of a transaction that a holder had notice). J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 563 (2d ed. 1980). However, the Bank's argument puts the cart before the horse. The jury found that the Bank was a mere holder; it was not entitled to holder in due course status because of its *knowledge* that Smentowski had no beneficial interest in the note (and therefore had no-

tice of claims and defenses). The Mocks did not prevail on their claim that the Bank was only a holder because the Bank was negligent in taking the note—they prevailed because the Bank acted in bad faith and with notice of claims and defenses. In addition, the record indicates that the trial court sustained the Bank's motion for directed verdict on the issue of negligence as a defense to a holder, and we need not consider this issue further.

### B. *Resulting Trust.*

The Bank contends that the finding that Smentowski held the note in a resulting trust is irrelevant to whether the Bank had any right to the note. To properly rule on this contention, we must first determine whether a resulting trust was created, and, if so, what affect the resulting trust had on the Bank's interest.

New Mexico has long recognized the doctrine of resulting trusts. *See Mapel v. Starriett,* 28 N.M. 1, 205 P. 726 (1922). It is an inference made by law from the circumstances and nature of the transaction between the parties, when the circumstances indicate that the party holding legal title to the property was not intended to have a beneficial interest in it. Thus, the courts infer that the holder of title holds it in trust for the beneficial owner, although there is no express intention to create a trust. *See McDermott v. Sher,* 59 N.M. 142, 280 P.2d 660 (1955).

In the case at bar, Smentowski, legitimately acting as a strawman for the real estate transaction, held the note, without any personal interest in it, for the Mocks, thereby creating a resulting trust. The Bank did not offer any evidence to rebut the inference and to show that Smentowski had a personal interest in the note.

The Bank properly points out that the trial court found it to be a holder of the note, and that, as a holder, it possessed the note and had rights in it, subject to claims and defenses. *See* NMSA 1978, §§ 55-3-301, 306, 419. The jury determined, however, that the Bank was not a holder in due course, and thus not exempt from certain defenses. *See id.* § 55-3-307. The Bank

contends, nevertheless, that the trial court erred in ruling that, as a matter of law, should the Bank be found not to be a holder in due course, the Mocks were automatically entitled to the note because Smentowski held the note as a trustee in a resulting trust for the benefit of the Mocks.

We believe that the Bank has misconstrued the issue. The court did determine that Smentowski held the note in a resulting trust, and properly so. Our reading of the record does not indicate that the trial court ruled that, as a matter of law, if the Bank was found to be a mere holder of the note, the Mocks were automatically entitled to the note because of the resulting trust. By finding the resulting trust the court found that the Mocks had a legitimate interest in the note, and that Smentowski had none. The Bank claims that it is irrelevant as to it that Smentowski had no interest in the note. However, the resulting trust is relevant to the Bank because it was determined that the Bank knew of it, and thus the Bank lost its holder in due course status. The significance of the resulting trust is that it established the Mocks' claim to the note and Schmitz' defense to payment to the Bank. The jury found that the Bank took the note with notice of the trust (i.e. the Mocks' claim) and not in good faith. Thus, the jury found that the Bank was not entitled to holder in due course status, and took subject to claims and defenses of which it knew.

### IV. THE PRIMA FACIE TORT.

This court is faced today with two questions: Should a cause of action in prima facie tort be recognized in New Mexico, and, if so, did the Mocks prove that the Bank committed a prima facie tort?

### A. *Prima Facie Tort and New Mexico Jurisprudence.*

The Bank contends that we should refuse this opportunity to recognize prima facie tort. It claims that the two jurisdictions that have recognized prima facie tort as a specific tort cause of action, New York and

Missouri, have found prima facie tort to be arcane and unworkable, spawning much litigation without appreciable benefit to plaintiffs. We disagree, and hold today that prima facie tort is recognized in New Mexico. As will be shown, it accords with our recent tort jurisprudence, and, if properly used, provides a remedy for plaintiffs who have been harmed by a defendant's intentional and malicious acts that fall outside of the rigid traditional intentional tort categories.

Prima facie tort is not a recent innovation; its development has been discussed in various law reviews and decisions spanning practically a century. *See Beardsley v. Kilmer*, 236 N.Y. 80, 140 N.E. 203 (1923); Holmes, *Privilege, Malice, and Intent*, 8 Harv.L.Rev. 1 (1894); Brown, *The Rise and Threatened Demise of the Prima Facie Tort Principle*, 54 Nw.U.L.Rev. 563 (1959) (hereinafter Brown); Forkosch, *An Analysis of the "Prima Facie Tort" Cause of Action*, 42 Cornell L.Q. 465 (1957).

The theory underlying prima facie tort is that a party that intends to cause injury to another should be liable for that injury, if the conduct is generally culpable and not justifiable under the circumstances. Restatement (Second) of Torts § 870 (1977). With variations in the several jurisdictions that have adopted the tort, its elements are generally recognized to be:

1. An intentional, lawful act by defendant;

2. An intent to injure the plaintiff;

3. Injury to plaintiff, and

4. The absence of justification or insufficient justification for the defendant's acts.

*Porter v. Crawford & Co.*, 611 S.W.2d 265, 268 (Mo.Ct.App.1980); *see ATI, Inc. v. Ruder & Finn, Inc.*, 42 N.Y.2d 454, 458, 368 N.E.2d 1230, 1232, 398 N.Y.S.2d 864, 866 (1977).

Although the concept that unjustified intentionally caused harm should be the basis for liability has been utilized without denominating the theory as prima facie tort throughout recent jurisprudence, *see, e.g., Diaz v. Kay–Dix Ranch*, 9 Cal.App.3d 588, 592 n. 3, 88 Cal.Rptr. 443, 445 n. 3 (1970);

*Moran v. Dunphy*, 177 Mass. 485, 59 N.E. 125 (1901); *Tuttle v. Buck*, 107 Minn. 145, 119 N.W. 946 (1909); *Mangum Electric Co. v. Border*, 101 Okla. 64, 222 P. 1002 (1923), New York was the first state to adopt prima facie tort as a specific cause of action. *See Advance Music Corp. v. American Tobacco Co.*, 296 N.Y. 79, 70 N.E.2d 401 (1946); Brown, 54 Nw.U.L.Rev. at 566. The cause of action as it developed in New York, became stylized, as courts added requirements; for example, that special damages be proven, that the complaint not plead any other tortious conduct, that the activity complained of be otherwise lawful and not fit into any other established tort category, and that the activity complained of be motivated by a solely malicious intent. Note, *Prima Facie Tort*, 11 Cumb.L.Rev. 113, 116–18 (1980). In recent years, New York has retreated somewhat from these requirements, allowing alternative pleadings and expanding the definition of prima facie tort. *Board of Educ. v. Farmingdale Classroom Teachers Ass'n, Local 1889*, 38 N.Y.2d 397, 406, 343 N.E.2d 278, 284–85, 380 N.Y.S.2d 635, 644–45 (1975).

Restatement (Second) of Torts § 870 (1977) has adopted a much more general theory of prima facie tort, providing that: "One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability."

The Restatement approach embodies a balancing process, because "not every intentionally caused harm ... deserves a remedy in tort." *Id.* comment e. Thus, the activity complained of is balanced against its justification and the severity of the injury, weighing: (1) the injury; (2) the culpable character of the .conduct; and (3) whether the conduct is unjustifiable under the circumstances. *Id.* The dual nature of the determination is manifested by the requirement that the conduct be both culpable—wrongful or improper in general—and

unjustifiable—under the circumstances no privilege should apply. *Id.*

The Restatement further breaks down the analytical process into four considerations that should be considered in balancing the above factors: "(1) the nature and seriousness of the harm to the injured party, (2) the nature and significance of the interests promoted by the actor's conduct, (3) the character of the means used by the actor and (4) the actor's motive." *Id.*

It is apparent from a discussion of the Restatement view that, although it considers the same factors as do the New York courts, it does so in a more flexible way, by balancing the factors rather than by creating stylized requirements.

Instructive to this court in our consideration of prima facie tort is the Missouri experience. In *Porter v. Crawford & Co.,* 611 S.W.2d 265 (Mo.Ct.App.1980), the court addressed the issue we consider today: whether to allow recovery in tort for a lawful act performed maliciously and with the intent to injure the plaintiff. *Id.* at 266. *Porter* involved an automobile accident, where the defendant-insurance agent settled the plaintiff's claim and delivered a check to plaintiff in release of claims. Plaintiff deposited the draft and wrote checks against it, while, without plaintiff's knowledge, the defendant cancelled the draft. Plaintiff incurred injuries as a consequence, and brought suit alleging that, by acting with careless and reckless disregard for plaintiff's rights and without just cause, the defendant had maliciously acted with intent to injure plaintiff. *Id.* at 267.

The Missouri court examined the New York experience and the Restatement view, and fashioned a prima facie tort doctrine that combined the fundamental policy view of the Restatement with the analytically consistent aspects of the New York experience. We feel that their approach was analytically sound, and we adopt it, with refinements as discussed below.

To constitute a prima facie tort, the tortfeasor must act maliciously, with the intent to cause injury, and without justification or with insufficient justification. One early

development in New York was that the defendant was required to have acted with "disinterested malevolence"—the intent to harm being the sole motivation for the action. This was a means to determine if otherwise lawful conduct was done without any beneficial end but solely to injure the plaintiff. *See Porter,* 611 S.W.2d at 269.

We reject this approach in favor of the balancing approach sanctioned by the Restatement. A sole intent to injure is, by definition, unjustifiable—a purpose other than to injure the plaintiff is a justification for the act. *Id.* Thus, if a defendant offers a purpose other than the motivation to harm the plaintiff as justification for his actions, that justification must be balanced to determine if it outweighs the bad motive of the defendant in attempting to cause injury. *See id.;* Restatement (Second) of Torts § 870 comment c (1977); *but see Rodgers v. Grow–Kiewit Corp.–Mk.,* 535 F.Supp. 814, 816 (S.D.N.Y.), *aff'd* 714 F.2d 116 (2d Cir.1982) ("[M]otives of profit, economic self-interest or business advantage are by their terms not malicious, and their presence, even if mixed with malice or personal animus, bars recovery under prima facie tort.")

■ We believe that to allow a defendant to escape liability solely because he can demonstrate some economic benefit to himself from the complained of act would defeat the policy behind our recognition of prima facie tort—to allow a plaintiff to recover for intentionally committed acts that, although otherwise lawful, are committed with the intent to injure. Thus, we hold that the act must be committed with the intent to injure plaintiff, or, in other words, without justification, but it need not be shown that the act was solely intended to injure plaintiff. *Porter,* 611 S.W.2d at 269; Restatement (Second) of Torts § 870 (1977); *see Speer v. Cimosz,* 97 N.M. 602, 606, 642 P.2d 205, 209 (Ct.App.), *cert. denied,* 98 N.M. 50, 644 P.2d 1039 (1982); *Bynum v. Bynum,* 87 N.M. 195, 197–98, 531 P.2d 618, 620–21 (Ct.App.), *cert. denied,* 87 N.M. 179, 531 P.2d 602 (1975).

We also accept the view held by New York and Missouri that prima facie tort may be pleaded in the alternative; however, if at the close of the evidence, plaintiff's proof is susceptible to submission under one of the accepted categories of tort, the action should be submitted to the jury on that cause and not under prima facie tort. *Bandag of Springfield, Inc. v. Bandag, Inc.*, 662 S.W.2d 546, 552–53 (Mo. Ct.App.1982); *Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d at 406, 343 N.E.2d at 284–85, 380 N.Y.S.2d at 644–45. Thus, double recovery may not be maintained, and the theory underlying prima facie tort—to provide remedy for intentionally committed acts that do not fit within the contours of accepted torts—may be furthered, while remaining consistent with modern pleading practice. *Id.*

### B. *Adoption of Prima Facie Tort Is Consistent with New Mexico Jurisprudence.*

Contemporary scholarship recognizes that there exists a residue of tort liability, which has escaped categorization in the forms of tort action, that is available for development into recognized torts as the need arises. *Brown*, 54 Nw.U.L.Rev. at 573; *Porter*, 611 S.W.2d at 268. In recognizing the tort of prima facie tort, this court is acting well within the tradition of the development of tort law in this jurisdiction. New Mexico has recognized that tort law is not static—it must expand to recognize changing circumstances that our evolving society brings to our attention. Thus, in other areas, we have recognized that intentional, malicious conduct that injures another, even though it may not have been recognized by the heretofore accepted areas of intentional tort, can serve as a basis for tort liability. We have also been very willing to adopt the view of the Restatement of Torts to assist our development of new tort areas.

Accordingly, New Mexico has recognized as tortious inducing a breach of contract, adopting the view promulgated in Restatement of Torts § 766 (1939). *Wolf v. Perry*, 65 N.M. 457, 461, 339 P.2d 679, 681 (1959) (requiring that "one who, without justifica-

tion or privilege to do so, induces a third person not to perform a contract with another, is liable to the other for the harm caused thereby"); *see also Williams v. Ashcraft*, 72 N.M. 120, 381 P.2d 55 (1963) (recognizing the tort of wrongful interference with another's business relations). We have adopted the cause of action of intentional interference with prospective contractual relations, relying on the tort as articulated in Restatement (Second) of Torts § 766(B) (1977). *M & M Rental Tools, Inc. v. Milchem, Inc.*, 94 N.M. 449, 452–54, 612 P.2d 241, 244–46 (Ct.App.1980) (one who, with "bad motive," intentionally interferes with another's prospective contractual relations, is subject to liability); *Anderson v. Dairyland Ins. Co.*, 97 N.M. 155, 158–59, 637 P.2d 837, 840–41 (1981). These torts reflect the underlying theory of prima facie tort as applied to contractual relations—the underlying malicious motive of a defendant's actions, done without justification, makes an otherwise lawful act, competition, tortious.

New Mexico has also recognized the tort of intentional infliction of emotional distress, relying on Restatement (Second) of Torts § 46 (1965), *Mantz v. Follingstad*, 84 N.M. 473, 479–80, 505 P.2d 68, 74–75 (Ct. App.1972); *Ramirez v. Armstrong*, 100 N.M. 538, 673 P.2d 822 (1983), and we have recognized that the intentional and wrongful deprivation of the right to vote or hold public office creates tort liability. *Valdez v. Gonzales*, 50 N.M. 281, 176 P.2d 173 (1946).

In light of this prior jurisprudence, it becomes evident that we have traditionally afforded relief for wrongs intentionally and maliciously committed, giving credence to the maxim of prima facie tort theory: "prima facie, the intentional infliction of temporal damage is a cause of action, which, as a matter of substantive law, * * * requires a justification if the defendant is to escape." *Aikens v. Wisconsin*, 195 U.S. 194, 204, 25 S.Ct. 3, 5, 49 L.Ed. 154 (1904).

### C. *Application to the Case at Bar.*

All that remains is for us to determine whether the Bank committed a prima

facie tort against the Mocks. It is uncontradicted that the Bank was acting in an otherwise lawful manner. It took possession of a note as collateral on a loan, and when Smentowski defaulted on the loan, it moved to protect its interest and notified the payor to send its payment directly to the Bank.

It is also uncontradicted that the Mocks were injured by the Bank's actions. The mortgage on their ranch was not paid in a timely manner because the proceeds of the note were not turned over to Edmondson, precipitating a foreclosure action. To prevent the loss of the ranch, the Mocks were forced to borrow on their line of credit that they otherwise would have used to purchase cattle, and they thereby lost profit and were forced to under-utilize their land.

The second element of prima facie tort raises more substantial problems. The tort requires that the defendant not only intend the act, but that he also intend the harm. The Bank contends that the Mocks have not demonstrated that the Bank was motivated solely by a malicious intention to harm the Mocks; that the Bank, because it was motivated at least in part by economic self-interest, cannot be liable. As discussed above, we have rejected the requirement that the action be solely motivated by the intent to harm, as accepted by New York, in favor of the Restatement's balancing approach, whereby motives such as economic self-interest are weighed as an issue of justification.

The Bank contends that, nevertheless, our precedent dictates that we should adopt a standard of sole motivation to harm, citing *M & M Rental Tools*, 94 N.M. 449, 612 P.2d 241 (Ct.App.1980). However, *M & M* dealt with interference with prospective contract; the rights involved with prospective contract are speculative, and more concrete rights are entitled to a greater degree of protection. *Dairyland Ins. Co.*, 97 N.M. at 158–59, 637 P.2d at 840–41. The rights implicated by a prima facie tort are not prospective—real, concrete damages must be proven, and we see no reason to adopt a higher standard of intent.

The Bank further contends that even Missouri requires that disinterested malevolence be shown, citing us to *Kiphart v. Community Fed. Sav. & Loan Ass'n*, 729 S.W.2d 510 (Mo.Ct.App.1987), and *Centerre Bank of Kansas City v. Distributors, Inc.*, 705 S.W.2d 42 (Mo.Ct.App.1985). Missouri does require that specific intent to injure be shown; merely showing the intent to do the act is insufficient. *See Kiphart*, 729 S.W.2d at 516. However, it does not require that the intent be solely to injure, and it requires that the intent be balanced to determine if the activity was beyond the bounds of what society should tolerate. *Porter*, 611 S.W.2d at 270. In *Kiphart*, the court found no specific intent to harm. The activity complained of was an interrogation to determine whether the plaintiff, a teller, was responsible for a cash shortfall. The court determined that, under the circumstances, the Bank was justified, and that it did not go so beyond the bounds of what it was entitled to do in protecting its economic interest to show a specific intent to harm. 729 S.W.2d at 517.

*Centerre* is interesting because the bank's actions there demonstrate why the Colorado National Bank stepped beyond the bounds of justifiable activity. In *Centerre*, the bank extended loans to a corporation. Upon the corporation's subsequent sale, the bank called its demand note, because it no longer considered the loan good. The bank eventually sued to collect, and the defendant corporation and personal guarantors counterclaimed, alleging *inter alia*, prima facie tort. The counterclaimants demonstrated that the bank knew that by calling its note it would put the corporation out of business, and presented evidence of personal animus toward the corporation's new owners. The court expressed doubt regarding the evidence of intent to injure, but resorted to the balancing test and determined that the bank was justified in calling the loan because it was acting to protect its *valid* business interest. 705 S.W.2d at 54; *see also Bank of Boston Int'l v. Arguello Tefel*, 644 F.Supp. 1423 (E.D.N.Y.1986).

398

The facts of *Centerre* demonstrate how the case at bar is easily distinguishable, and points out the crucial issue for us to decide in determining whether the requisite intent is present. The Colorado National Bank was not acting pursuant to a valid business interest. It did not make a valid business decision to call the note, and cannot now hide behind its claim that it was merely protecting its loan as a business justification. The standard for prima facie tort is whether there is an absence of justification or insufficient justification for the defendant's act. *Kiphart*, 729 S.W.2d at 516. In this case, the Bank's acts are not sufficiently justifiable—it knew Smentowski had no interest in the note and had accepted it initially not as collateral but to satisfy the bank examiners. The Bank does not contend that it did not intend the act, but maintains that it did not intend the harm and that its motive was justified and not malicious. The real issue for this court is whether the Bank's intentional act, without sufficient justification and with the certain knowledge that by moving against the note in which it had no interest it would injure an innocent party, rises to the level of intending the harm.

The Mocks contend that a prima facie tort requires nothing more than a showing that the act complained of was wrongful, intentional, and without justification, and that the injury was a natural and foreseeable consequence of the act. In other words, they argue that it is not necessary that the Bank possessed ill will or a malicious motive, i.e. that it intended to harm them, as long as it intended the act that caused the harm. Thus, they claim that because the Bank intended to move against the note, because this act was wrongful and unjustified under the circumstances, and because it caused the Mocks financial injury, the Bank is liable for prima facie tort.

We disagree with this analysis. To allow such a lax standard would be to invite every victim of an intentional act to bring an action in prima facie tort and would subvert the purpose of prima facie tort by eliminating the element requiring that a defendant intended injury to the plaintiff.

Nevertheless, we do agree that the Bank's actions did rise to the level of intending to commit the harm. Thus, we hold that, when a defendant, such as the Bank, has intentionally acted with the certainty that injury will necessarily result, the intent to injure has sufficiently been proved to allow a court to resort to the Restatement's balancing approach to determine whether the tort has been committed. This approach differs from that adopted to New York, yet we believe that the balancing approach allows this lessened degree of proof of intent to be considered. *See Brown*, 54 Nw.U.L.Rev. at 569–70; *Morrison v. National Broadcasting Co.*, 24 A.D.2d 284, 266 N.Y.S.2d 406 (1965) (finding liability for intentional, foreseeable infliction of harm in tort, although not in the narrow confines of the prima facie tort doctrine as it had by then evolved in New York), *rev'd on other grounds*, 19 N.Y.2d 453, 227 N.E.2d 572, 280 N.Y.S.2d 641 (1967); *Smith v. Fidelity Mut. Life Ins. Co.*, 444 F.Supp. 594, 598 n. 6 (S.D.N.Y. 1978); *but see Donahue v. Pendleton Woolen Mills, Inc.*, 633 F.Supp. 1423 (S.D.N.Y.1986) (where plaintiff alleged defendant acted in reckless disregard of plaintiff's rights and not that defendant intended to injure plaintiff, no cause of action in prima facie tort).

■ Nevertheless, the Bank argues that the Mocks had alternative theories for tort relief available, specifically in fraud and conversion, and thus they should not have been allowed to proceed on the theory of prima facie tort. We agree that prima facie tort should not be used to evade stringent requirements of other established doctrines of law. *See, e.g., Lundberg v. Prudential Ins. Co. of America*, 661 S.W.2d 667, 671 (Mo.Ct.App.1983) (prima facie tort cannot be used to avoid employment at will doctrine); Restatement (Second) of Torts § 870 comment j (1977) ("In determining whether a new tort can appropriately eliminate a restrictive feature of a traditional tort it is important to give careful consideration to the nature of the restriction."). However, it is apparent that the Mocks possessed claims in neither fraud nor con-

version. A fundamental element of fraud is a misrepresentation of fact, made with the intent to deceive a third party and to induce his reliance. *Cargill v. Sherrod*, 96 N.M. 431, 631 P.2d 726 (1981). On the facts presented, it is apparent that the Bank did not misrepresent facts to the Mocks to induce their reliance, and a cause of action in fraud would not lie. A cause of action in conversion requires proof of wrongful possession of property inconsistent with the owner's rights. *Molybdenum Corp. v. Brazos Eng'g Co.*, 81 N.M. 708, 710, 472 P.2d 971, 973 (1970). The present facts indicate that the Bank lawfully came into possession of the note; it was their subsequent. activity that was tortious. Thus, the Mocks could not have proceeded with either theory.

The Bank also contends that the Mocks pursued the prima facie tort theory rather than that of the fraud to evade the stringent clear and convincing standard of proof required to prove fraud. As already discussed, the Mocks had no basis to pursue the fraud theory. In addition, the court properly instructed the jury that the standard of proof for prima facie tort was by a preponderance of the evidence.

Thus, it is apparent that the Mocks did present the elements of a prima facie tort, and it is therefore necessary to resort to the balancing test to determine whether the Bank's acts could reasonably have been found by the jury to be tortious. The factors we consider are: (1) the nature and seriousness of the harm to the injured party; (2) the interests promoted by the actor's conduct; (3) the character of the means employed by the actor, and (4) the actor's motives. Restatement (Second) of Torts § 870 comments f, g, h & i (1977); *Lundberg*, 661 S.W.2d at 671. In considering the first factor, physical, concrete harm is weighed more heavily than emotional or prospective economic harm. With reference to the second, the court must consider established privileges or rights. In balancing the third consideration, conduct offensive to society's concepts of fairness and morality favors liability, and in determining the last, the degree of malice is significant. *Id.*

Here, the Mocks received palpable economic injury. As a result of the Bank's actions, they were forced to pay off the mortgage in toto, borrowing funds from their line of credit, and thereby suffering injury to their ranching business. With regard to the second factor, although under other circumstances the Bank would be privileged to protect its loan and move against the collateral, the Bank's knowledge that it had no interest in the note negates its right to move against it. Thus, the character of the means used favors the Mocks. In considering the third factor, again, although under different circumstances the Bank would have rightfully acted as it did, the evidence indicates that the Bank was concerned solely with its own economic well-being, without privilege, to the exclusion of any harm its actions would cause to innocent parties that would result. Its knowledge of the underlying factors makes its means offensive and unfair and denotes that the Bank was acting under the color of economic privilege to harm innocent people—means that were both offensive and unfair. Finally, the Bank's motive, although not actually to injure the Mocks, was with such utter disregard for the Mocks' interests as to rise to the level of specific intent to injure. The Bank's argument that it acted solely for its own economic benefit does not negate its culpability under these circumstances.

It was proper for the court below to balance these factors, and, as we have demonstrated, the jury's decision was reasonable. We therefore AFFIRM.

IT IS SO ORDERED.

SOSA, C.J., and WILSON, J., concur.