**EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,**

v.

**MTS CORP., d/b/a Supercuts, and TMS Corp., d/b/a Supercuts, Defendants.**

**Stella BRASHER, Plaintiff–Intervenor,**

v.

**MTS CORP., d/b/a Supercuts, TMS Corp., d/b/a Supercuts, Thomas G. Stribling, Sr., Martha G. Stribling, and Joel D. Stribling, Defendants.**

**No. CIV 94–1473 LH/WWD.**

United States District Court,
D. New Mexico.

July 26, 1996.

Ronald F. Ross, U.S. Attorney's Office, District of New Mexico, Albuquerque, NM; Richard R. Trujillo, Richard L. Green, Sandra Padegimas, Mary Jo O'Neill, Kelly M. Humphrey, EEOC, Phoenix, AZ, for plaintiff.

Bruce L. Herr, Sarah M. Singleton, Grace Phillips, Montgomery & Andrews, Santa Fe, NM, for intervenor.

Marcia E. Lubar, Hatch, Allen & Shepherd, Albuquerque, NM; J. Edward Hollington, J. Edward Hollington & Associates, Albuquerque, NM, for defendants.

## MEMORANDUM OPINION

HANSEN, District Judge.

**THIS MATTER** comes before the Court on the following motions: 1) Defendants MTS and TMS' Motion for Summary Judgment as to Plaintiff's and Plaintiff–Intervenor's Claims for Discrimination and Retaliation Based on the ADA (Docket No. 182); 2) Defendants' Motion for Summary Judgment as to all Common Law Counts by Plaintiff–Intervenor Brasher (Docket No. 189); and, 3) Plaintiff's Motion to Strike Defendants' Reply or, Alternatively, Permission to File Surreply (Docket No. 271). The Court, having reviewed the submissions of the parties, having heard oral argument on December 15, 1995, and otherwise being fully advised in the matter finds that: 1) Defendants MTS and TMS' Motion for Summary Judgment as to Plaintiff's and Plaintiff–Intervenor's Claims for Discrimination and Retaliation Based on the ADA is not well taken and should be denied; 2) Defendants' Motion for Summary Judgment as to all Common Law Counts by Plaintiff–Intervenor Brasher is well taken and should be granted, in part, and denied, in part; and, 3) Plaintiff's Motion to Strike Defendants' Reply or, Alternatively, Permission to File Surreply is not well taken and should be denied.

### Standard For Summary Judgment

Summary judgment is appropriate only in cases where, looking at the facts in the light most favorable to the non-moving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Handy v. Price,* 996 F.2d 1064, 1066 (10th Cir.1993); FED.R.CIV.P. 56. The movant bears the burden of establishing that no genuine issue exists as to any material fact. *National Union Fire Ins. Co. v. Emhart Corp.,* 11 F.3d 1524, 1528 (10th Cir.1993). This burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the movant meets its burden, the burden shifts to the non-moving party to

demonstrate a genuine issue for trial on a material matter. *Thrifty Rent–A–Car Systems, Inc. v. Brown Flight Rental One Corp.,* 24 F.3d 1190, 1194 (10th Cir.1994). Only material factual disputes preclude summary judgment; factual disputes about immaterial items are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Affidavits or other evidence offered by a non-movant must create a genuine issue for trial; it is not enough that the evidence be "merely colorable" or anything short of "significantly probative." *Id.* at 249–50, 106 S.Ct. at 2511. This is because when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)).

### Background

Many, if not most, of the facts underlying this case are in dispute—Defendants' arguments to the contrary notwithstanding. In considering the Defendants' motions for summary judgment, therefore, I will view the record in the light most favorable to the non-movant. *Blue Circle Cement v. Board of County Comm'rs,* 27 F.3d 1499, 1503 (10th Cir.1994).

This lawsuit arises from two charges of discrimination, premised on the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.,* filed with the Equal Employment Opportunity Commission ("EEOC") by Tommy Brasher (hereinafter "Brasher"—the original plaintiff in intervention until his death) against his former long-term employers, Defendants MTS Corp. and TMS, Inc. ("Supercuts"). In the first charge filed with the EEOC, Brasher alleged Supercuts discriminated against him because of his illness—AIDS—when Joel Stribling involuntarily transferred him to the San Mateo shop and refused to permit him to return to the Fourth Street salon. Plaintiffs contend Brasher was constructively discharged because he was forced to quit or take an unpaid leave of absence, given the hostile environment at Supercuts. Plaintiffs further allege that Brasher was later actually discharged because of his disability after Supercuts declined his request for a 30–day extension of his leave of absence. In the second charge filed with the EEOC, Brasher alleged Supercuts retaliated against him because he had filed the first charge of discrimination with the EEOC. Supercuts denied Brasher an expense-paid trip to a company convention in Dallas, banned Brasher from their premises, prevented Brasher from attending the annual Christmas party in 1994, mishandled Brasher's COBRA application, and denied Brasher a reasonable accommodation of a 30–day extension of his leave of absence, resulting in his termination.

Brasher began working for Supercuts in 1987. In 1993, Supercuts promoted Brasher to Senior Manager, making him responsible for the day-to-day operation of one "home base" salon and the oversight of an additional three hair salons. His "home base" was the Fourth Street salon. Sometime in mid–1994, several employees of the Fourth Street salon became concerned about the possibility of becoming infected with the AIDS virus by working so closely with Mr. Brasher. In response to a threatened walkout by employees of the Fourth Street salon, an employee meeting was held on July 18, 1994, to discuss Mr. Brasher and AIDS. Brasher was not invited to attend nor informed that such a meeting was to be held. At the meeting, a variety of things were allegedly said about Brasher by fellow employees, employee spouses, and Martha Stribling, one of the owners of Supercuts. These alleged statements centered on the intention of Stribling and other employees to get rid of Brasher because of his AIDS and because he was bad for business.

On July 13, 1994, prior to the employee meeting, Brasher had temporarily moved to the San Mateo salon to correct some personnel-related problems there. The San Mateo salon was one of the four salons over which Brasher had supervisory responsibilities. However, after approximately one week there, he asked Joel Stribling, the chief executive officer of the defendant corporations,

that he be allowed to return to the Fourth Street salon because the San Mateo salon was too stressful due to under staffing at the salon. Brasher made this request of Joel Stribling after the employee meeting, but prior to Brasher becoming aware of the employee meeting. Joel Stribling denied Brasher's request, stating that several of the Fourth Street employees could not work with him any longer because he had AIDS. Mr. Stribling contends he stated only that Brasher needed to resolve the problems at the San Mateo salon first. On July 21, 1994, Brasher learned of the employee meeting and the things that were allegedly discussed. Brasher became very upset, vomiting on himself on his way to work. He contacted Joel Stribling and told him that, given the circumstances, he "wasn't emotionally able to face the feelings . . . that [he] was going through" and that he could no longer continue to work. Defendants contend Joel Stribling then suggested that Brasher take a leave of absence, rather than quit, in order that Brasher could qualify for a Supercuts 10–year stock bonus in October, 1994. On August 3, 1994, Brasher began a 90–day leave of absence. The first two weeks of the leave of absence were accrued vacation time, for which Brasher was paid. The remaining portion of the leave of absence was unpaid. At that time, Supercuts had a policy permitting an employee to take up to a 90–day leave of absence for medical reasons. Extensions of leave beyond 90 days were permitted for "extenuating circumstances" such as "medical emergencies."

Brasher filed his initial charge of discrimination with the EEOC on September 14, 1994, and on October 18, 1994, the EEOC issued a reasonable cause Letter of Determination to the defendants and began the process of conciliation.

On October 1, 1994, Brasher was hospitalized for pneumocystis carinii pneumonia (PCP), an AIDS-related opportunistic illness. Brasher's treating physician, Dr. Mawhorter, believes the onset of PCP was brought about primarily because Brasher discontinued taking his Bactrim medication. However, she also points out that stress and anxiety associated with Brasher's job situation was a contributing factor because it aggravated the onset and severity of rashes on his body. Brasher stopped taking his bacterim medication, in part, because the medication could further aggravate these rashes. In any event, after Brasher was released from the hospital in early October, 1994, he was on oxygen and had home nursing services every other day. Brasher suffered from a kidney infection on October 31, 1994.

On October 20, counsel for Defendants sent a letter to the EEOC advising that Brasher could return to his position as Senior Manager if he could do so prior to the end of his leave of absence on November 1, 1994. In the letter, Defendants admitted no wrongdoing on their part and did not offer any back pay or other monetary compensation. The evidence indicates Brasher never saw this letter. On October 31, 1994, Brasher requested a 30–day extension of his leave of absence due to his recent illnesses. Joel Stribling summarily denied Brasher's requested extension by letter on November 7, 1994, and informed Brasher that his employment with Supercuts was terminated. Stribling did not talk with Brasher or Brasher's physician prior to denying Brasher's request for an extension of his leave of absence. In the termination letter, Joel Stribling informed Brasher of his COBRA health insurance rights, although giving Brasher only until November 20, 1994, to remit payment (in the form of a cashier's check) for coverage in December.

Supercuts, Inc., held its nationwide annual convention in Dallas, Texas, in October, 1994. Brasher was to receive an award for 10 years of service. The award included a stock bonus valued at approximately $3,000. Defendants refused to pay Brasher's travel and accommodation expenses in order that he could attend the convention. Defendants argue Brasher was not qualified for an expense-paid trip to the convention. Plaintiffs argue Defendants' refusal to pay Brasher's expenses represents retaliation, not policy. Brasher paid his own expenses and attended the convention.

Following Brasher's termination, Defendants wrote Brasher a letter informing him he was no longer permitted on their premises, unless there to get his hair styled, osten-

sibly because his calls and visits were disruptive. Additionally, Brasher was not invited to the annual Christmas party in 1994. The evidence indicates Brasher's friend and roommate, Rick Stevens, a Supercuts employee, was told not to bring Brasher to the party as his guest.

**I.** *Plaintiff's Opposed Motion to Strike Defendants' Reply or, Alternatively, Permission to File Surreply to New Arguments Raised in Defendants' Reply.*

Due to my disposition of the issue of judicial estoppel, as outlined in Section II below, I conclude there is no need for Plaintiffs to file a surreply, nor do I believe it necessary to strike portions of Defendants' reply memorandum. Therefore, I conclude Plaintiff's Motion to Strike Defendants' Reply or, Alternatively, Permission to File Surreply (Docket No. 271) is not well taken and should be denied.

**II.** *Defendant MTS and TMS' Motion for Summary Judgment as to Plaintiff's and Plaintiff–Intervenor's Claims for Discrimination and Retaliation Based on the ADA.*

Defendants ask that I dismiss Plaintiffs' claims brought under the ADA. In support of this motion, Defendants point to four legal arguments that purportedly warrant dismissal of Plaintiffs' claims: A) Brasher is not a "qualified individual" under the ADA; B) Defendants did not discriminate against Brasher because of his medical condition; C) Defendants did not retaliate against Brasher for filing a claim based on the ADA; and, D) Brasher cannot prove any causal connection between his alleged emotional damages and the conduct of Defendants.

**A. Whether Brasher is a "qualified individual" under the ADA.**

Defendants contend Brasher is not entitled to relief under the ADA because he is not a "qualified individual." The ADA provides that, "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to the ... terms, conditions, and priv-

ileges of employment." 42 U.S.C. § 12112(a) (1994).

Under the ADA, a "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. 12111(8) (1994); *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Thus, under the ADA, a plaintiff has the burden of establishing:

1. that he is a disabled person within the meaning of the ADA;

2. that he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and

3. that the employer terminated him because of his disability.

*White*, 45 F.3d at 360–61. Defendants concede that Brasher was a disabled person within the meaning of the ADA.

The Tenth Circuit has adopted the Fifth Circuit's two-part analysis for determining whether a person is qualified within the meaning of the ADA: first, the Court must determine whether the individual could perform the essential functions of the job— *i.e.*, functions that bear more than a marginal relationship to the job at issue. *Id.* at 361. Second, if (but only if) the Court concludes that the individual is not able to perform the essential functions of the job, the Court must determine whether any reasonable accommodation by the employer would enable him to perform those functions. *Id.* at 362.

Defendants assert that, based on their "undisputed facts" Brasher was unable to work at all, for medical reasons, from August 4, 1994, until the time of his second deposition in May 1995. Further, no reasonable accommodation by Defendants would have enabled Brasher to perform the essential functions of the job. Thus, they argue that he was not a "qualified individual."

The first task in applying the *White* analysis is to define the "essential functions" of the job at issue in this case: *White*, 45 F.3d at

362. To this end, Defendants assert that the job of Senior Manager required Brasher to: operate and manage the Fourth Street salon, his home base; oversee the management and operation of three other salons; perform 320 haircuts per month; and handle all employee-related matters at the four salons. Defendants estimate that these functions would require a minimum of 40 to 45 hours per week.

Defendants' assert that Brasher was not a "qualified person" because, at the time of the alleged discriminatory actions by Defendants, Brasher was unable to work 40 hours or more per week. Additionally, Defendants argue Brasher's August 10, 1994, application for disability benefits with the Social Security Administration estops Brasher from asserting he was able to perform the essential functions of the job.

While the evidence indicates Brasher's attendance was erratic throughout 1994, I conclude Defendants have failed to demonstrate the absence of a genuine issue of material fact as to whether a 40–hour work week was an essential function of the job of Senior Manager, whether Brasher failed to consistently put in 40 hours of work per week prior to the alleged discrimination, or whether Brasher was incapable of performing the essential functions of his job, with or without accommodation, at any time after August 4, 1994.

First, the record supports the conclusion that Defendants never informed Brasher he was failing to adequately perform any essential function of his job prior to August 3, 1994. Prior to the employee meeting and the refusal to allow Brasher to return to the Fourth Street shop, Defendants had not reprimanded Brasher for lack of attendance, poor performance, or anything else. At best, Joel Stribling recalls talking to Brasher at some time in 1993–94 about his attendance. Further, I fail to see how the issue of Brash-

er's attendance is related to what Brasher contends was an involuntary transfer to another shop. Certainly, if Brasher was unable to perform the essential functions of his job as Senior Manager on or about August 3, 1994, as Defendants contend, he clearly would not be able to perform those duties any more effectively from the San Mateo salon. Defendants fail to point to any evidence in the record that Brasher failed to: meet his 320 haircuts per month requirement; effectively manage or operate the Fourth Street salon; effectively manage the other three salons under his supervision; or handle employee-related matters at any of the four salons. Additionally, Defendants have failed to demonstrate how a minimum of 40 hours per week of salon attendance is an essential function of the job of Senior Manager. While Defendants may be correct in their assertion that attendance is an essential function of every job, 40 hours of attendance certainly is not, absent some specific proof.

Second, even if I were to conclude that a 40–hour work week was an essential function of the job of Senior Manager, a genuine issue of material fact exists as to whether Brasher was, prior to August 3, 1994, performing at such a level. While Brasher missed approximately seven weeks of work between January, 1994, and August, 1994, due to accidents unrelated to AIDS, the record indicates Brasher used his accrued sick and vacation leave for at least six of these seven weeks. While Defendants present some evidence indicating Brasher failed to consistently put in a "punched in" 40–hour week for much of 1995, due in part to AIDS-related illnesses, Defendants fail to sufficiently quantify the severity of the alleged under-attendance prior to July, 1994.[1] Indeed, as of August 4, 1994, Brasher still had two weeks of accrued vacation time that had not been used. In addition, Brasher, a salaried employee, contends he performed many of the functions of his job at home or otherwise while not

---

1. In support of their position, Defendants state that between February 1, 1994, and May 28, 1994, Brasher worked less than eight hours a day for 56 of the days he was scheduled to work. However, Brasher was often scheduled to work more than five days per week. For example, in February, 1994, Brasher is listed as having failed to work eight hours a day on 20 of the days of the month. Brasher is listed as only having two days off in the month of February. Brasher worked six days in February for which he is credited with having put in at least a "full eight hour day." As a result, Brasher need only have averaged 5.6 hours per day for each of the remaining 20 days in February in order to have satisfied Defendants' 40–hour "requirement."

"punched in." Plaintiffs submit evidence that the other Senior Manager for Defendants operated in a similar fashion, working up to 20 hours per week out of her home. Plaintiffs, therefore, create a question of fact as to whether Brasher, on or before August 3, 1994, was capable of performing the essential functions of his job.

Finally, Defendants assert Brasher was not a "qualified person" at any time after August 3, 1994, because he was not able to return to work. Defendants rely on two related theories in support of this position. First, Defendants contend the doctrine of judicial estoppel prevents Plaintiffs from taking the position that Brasher was capable of working after August 4, 1994, because Brasher applied for and received disability benefits from the Social Security Administration. In order to qualify for such benefits, Brasher and his physician had to attest that he was incapable of working due to illness or other disability. Defendants contend Plaintiffs are now estopped from claiming Brasher was not disabled. I begin by noting that the Tenth Circuit does not recognize the doctrine of judicial estoppel. *Parkinson v. California Co.*, 233 F.2d 432 (10th Cir.1956); *United States v. 49.01 Acres of Land*, 802 F.2d 387 (10th Cir.1986); and, *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509 (10th Cir.1991). Even if it did, I would not apply the doctrine to the circumstances of this case. Brasher completed the application over the phone, outside of the judicial machinery, without the benefit of counsel, and arguably under a great deal of emotional stress. In addition, under Plaintiffs' version of the facts of this case, Defendants forced Brasher into the unenviable position of being unemployed, in the advanced stages of AIDS, and emotionally devastated by their discriminatory conduct. I decline to exercise my equitable discretion in this area to the benefit of Defendants.

Defendants second basis for asserting Brasher was not a "qualified person," centers on Defendants' contentions that Brasher and his treating physician, Dr. Mawhorter, admitted he was unable to work between August 3, 1994, and May, 1995. Brasher died in August, 1995. Plaintiffs, however, present evidence challenging the validity of Defendants' interpretation of the evidence and create a factual dispute whether Brasher was able to resume his duties as Senior Manager, save the hostile environment that made him emotionally unable to handle working, at least until February, 1995, when physical conditions began to overwhelm him. In addition, a factual dispute exists whether the actions of Defendants, rather than Brasher's AIDS, caused Brasher to be unable to work.

In summary, the issue of when Brasher became incapable of performing the essential functions of his position at Supercuts is a disputed question of fact for determination by a jury.

## B. Whether Defendants discriminated against Brasher because of his medical condition.

Defendants next argue that no genuine issue of material fact exists on the issue of whether Defendants discriminated against Brasher because of his medical condition. In particular, Defendants claim they did not harass, condone or create a hostile environment. I disagree.

Hostile work environment harassment occurs "where 'conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'" *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986) (quoting 29 C.F.R. § 1604.11(a)(3)). *See also Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987). "For harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor*, 477 U.S. at 67, 106 S.Ct. at 2405. In analyzing a claim of discrimination based on an abusive or hostile environment, courts must consider the totality of the circumstances.

> [W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). The *Harris* Court clearly stated that the presence or absence of any one factor is not dispositive. While the environment described by the Plaintiffs fails to rise to the level described in *Meritor*, the Court pointed out that *Meritor* represented an "especially egregious example[ ] of harassment." *Id.* I conclude that factual questions exist as to whether the atmosphere was sufficiently hostile to constitute harassment under the ADA. In particular, Plaintiffs present evidence that Brasher was not allowed to return to the Fourth Street salon because the other employees threatened a walkout. In addition, Plaintiffs submit evidence that Martha Stribling made comments about "getting rid" of Brasher. Such evidence supports Plaintiffs' position that a hostile work environment existed, at least beginning in July, 1994, and Defendants failed to effectively address or eliminate it.

### C. Whether Defendants retaliated against Brasher for filing a claim based on the ADA.

■ Defendants next argue that no genuine issue of material fact exists on the issue of whether Defendants retaliated against Brasher for filing his initial discrimination charge with the EEOC on September 14, 1994. Again, I disagree. Plaintiffs have submitted evidence creating issues of fact as to the true motivations behind Defendants actions alleged to have been retaliatory in nature. In addition, a fact finder can infer that actions were retaliatory in nature based on the temporal proximity of the actions to

the protected activity. *Burrus v. United Tel. Co.*, 683 F.2d 339, 343 (10th Cir.1982).

### D. Whether Brasher can prove any causal connection between his alleged emotional damages and the conduct of Defendants.

■ Defendants next argue that the plaintiffs cannot prove a causal connection between the alleged discriminatory acts of Defendants and any emotional damages suffered by Brasher because of an extensive array of pre-existing emotional stress and depression in his life. Defendants assert Plaintiffs must present evidence, to a reasonable degree of medical certainty, that attributes a particular portion of the emotional stress in Brasher's life to Defendants' actions. In support of this position, Defendants point to two New Mexico Supreme Court cases: *Hebenstreit v. Atchison T. & S.F. Ry.*, 65 N.M. 301, 336 P.2d 1057 (1959), and *Britton v. Boulden*, 87 N.M. 474, 535 P.2d 1325 (1975).

I disagree with the position taken by Defendants. First, I find *Hebenstreit* factually distinguishable. *Hebenstreit* dealt with a purely medical issue of the degree to which the plaintiff's cancerous condition was aggravated by trauma associated with injuries sustained in an accident. While the medical expert testified at trial that the accident did aggravate her condition, he stated it would be pure speculation to attempt to estimate the degree of aggravation. The New Mexico Supreme Court held that it was error to submit the issue of aggravation to the jury. However, in this case, the issue of emotional distress damages is something courts typically rely upon juries to determine, often without any expert testimony. The issue is one of common experience. Further, there is evidence in the record that would aid a jury in quantifying the emotional damages associated with the alleged discriminatory actions of the Defendants.[2] Therefore, I conclude Defendants are not entitled to summary judgment as a matter of law on this issue.

---

**2.** Brasher testified that the "depression and anxiety I experienced before learning that my employers no longer wanted me to work for them because I have AIDS was nothing compared to the depression and anxiety I have experienced

since then." Brasher Affidavit, ¶ 6, attached as Exhibit 7 to Plaintiff EEOC's and Plaintiff–Intervenor Brasher's Response in Opposition to Defendants' Motion for Summary Judgment on Americans with Disabilities Act Claims.

## III. Defendants' Motion for Summary Judgment as to All Common Law Counts by Plaintiff–Intervenor Brasher

Plaintiff–Intervenor Brasher filed a complaint in intervention alleging six causes of action based on New Mexico common law in addition to his ADA claims against Defendants. Plaintiff–Intervenor's common law claims are as follows: A) retaliatory discharge; B) civil conspiracy; C) intentional infliction of emotional distress; D) negligent misrepresentation; E) negligent retention, supervision and training; and, F) prima facie tort. Defendants have moved for summary judgment as to each of these claims.

### A. Retaliatory Discharge.

To recover for retaliatory discharge, an employee "must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage ..." *Michaels v. Anglo Amer. Auto Auctions,* 117 N.M. 91, 92, 869 P.2d 279 (1994). Filing a charge of discrimination under the New Mexico Human Rights Act is an act that public policy has authorized or would encourage. *Gandy v. Wal–Mart Stores, Inc.,* 117 N.M. 441, 872 P.2d 859 (1994). It is undisputed that Brasher filed a claim of discrimination against Defendants under the New Mexico Human Rights Act just prior to his termination and that Defendants were aware of the claim prior to Brasher's termination.

Defendants contend that no material factual issues exist as to this claim and that Plaintiff was terminated because he was too ill to return to work, not because he filed a claim of discrimination. I disagree. As discussed earlier, both Brasher and his treating physician, Dr. Mawhorter, have stated in depositional or affidavit testimony that Brasher could have returned to work had the alleged hostile atmosphere towards his having AIDS been remedied. Again, a fact finder can also infer that discharge was retaliatory based on the temporal proximity of the discharge to the protected activity. *Burrus v. United Tel. Co.,* 683 F.2d 339, 343 (10th Cir.1982).

I, therefore, conclude that material factual disputes exist as to this claim and summary judgment should be denied.

### B. Civil Conspiracy.

In New Mexico, a civil conspiracy consists of: "a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Las Luminarias of the New Mexico Council of the Blind v. Isengard,* 92 N.M. 297, 300, 587 P.2d 444 (Ct.App.1978). Civil conspiracy is not of itself actionable; the gist of the action is the damage arising from the acts done pursuant to the conspiracy. Generally, to state a cause of action for conspiracy, the complaint must allege: (1) the existence of the conspiracy; (2) the wrongful act or acts done pursuant to the conspiracy; and, (3) the damage resulting from such act or acts. *Id.*

Defendants argue they are entitled to summary judgment because a corporation cannot conspire with its officers and employees.[3] A corporation is a single entity or individual. Further, Defendants argue that there was no wrongful act by them because they did not discriminate against Brasher.

Plaintiff–Intervenor responds that sufficient evidence of a conspiracy exists to go to the jury. First, Plaintiff–Intervenor contends that the officers of the defendant corporations (the Striblings) were acting for personal reasons when they agreed to "get rid of Tommy" because some employees threatened to walk out and because he was bad for business. In addition, Plaintiff–Intervenor argues that extra-corporate individuals were involved in the conspiracy to get rid of Brasher. Specifically, they point to the family members of employees who attended the July 18, 1994, employee meeting. These people raised concerns and objections regarding Brasher. Finally, Plaintiff–Intervenor claims a wrongful act was committed

---

**3.** Agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage. *Collins v. Union Fed. Sav. and Loan Ass'n,* 99 Nev. 284, 662 P.2d 610, 622 (1983).

and was the purpose of the conspiracy— terminating his employment because he had AIDS.

I conclude that Defendants' motivations, as alleged by Plaintiff–Intervenor, are clearly of the type contemplated by the courts as representing corporate considerations (*e.g.,* concerns over an employee walkout at the Fourth Street salon and Brasher being "bad for business"), not personal considerations. The financial interests of the Striblings as shareholders are the same as the corporate concerns of the defendant corporations. I conclude shareholder revenues cannot be among the personal reasons contemplated by the exception to the "intracorporate conspiracy doctrine." To hold otherwise would permit the exception to consume the basic rule.

In addition, I fail to understand how a spouse of an employee can become part of a conspiracy by voicing his or her concern, or even resentment, about a person with AIDS working with his or her spouse. There is no evidence in the record that these non-employees did anything other than voice their respective concerns.

Therefore, I conclude Defendants have sustained their burden, as to this claim, of demonstrating the absence of a genuine issue of material fact. Defendants are entitled to judgment as a matter of law on this claim, and it should be dismissed.

### C. Intentional Infliction of Emotional Distress.

 A claim for intentional infliction of emotional distress is viable only if premised on conduct which is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Doe v. Kohn Nast & Graf, P.C.,* 862 F.Supp. 1310, 1328 (E.D.Pa.1994). It is for the court to determine, as a preliminary matter, whether the conduct is so extreme as to permit recovery. *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3rd Cir.1988) (citing RESTATEMENT (SECOND) OF TORTS § 46 cmt. h (1965)).

 Defendants contend that none of the conduct alleged to have occurred by Plain-tiff–Intervenor was so extreme or outrageous that it could be "considered to be beyond all possible bounds of decency, and would be regarded as atrocious and intolerable in a civilized community." Plaintiff–Intervenor responds that Defendants' actions, taken together, constitute extreme and outrageous conduct.

Taking the facts as alleged by Plaintiff–Intervenor, the actions of Defendants simply do not rise to the level necessary to support a claim for intentional infliction of emotional distress.

> It has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been aggravated by 'malice,' or a degree or aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1965). The alleged wrongful conduct of Defendants instead more closely resembles that in the *Salazar* case in which a termination was allegedly based upon pregnancy of the employee. *See Salazar v. Furr's, Inc.,* 629 F.Supp. 1403 (D.N.M.1986). The alleged behavior of Defendant in the present case is just "not on a par with the egregiousness of facts" in cases successfully raising claims for intentional infliction of emotional distress. *Id.* at 1411.

The most egregious conduct alleged to have occurred in this case happened at the employee meeting Brasher did not attend. He only heard about the conduct after the fact. While Defendants should have reasonably anticipated Brasher would have been informed about the meeting, the alleged statements by the owner, Martha Stribling, that they would transfer the Brasher around until he finally quit and that people with AIDS should be placed in colonies, followed closely by Joel Stribling's refusal to permit Brasher to return to his home base, raises only an inference of improper motivation.

I, therefore, conclude that material factual disputes do not exist as to whether Defendants' alleged actions, taken together, constituted extreme and outrageous conduct. Defendants are entitled to judgment as a matter of law on this claim, and it should be dismissed.

### D. Negligent Misrepresentation.

■■■ In order to prevail upon a claim for negligent misrepresentation a plaintiff must prove that the defendant had no reasonable grounds for believing the statement made was true at the time it was made. SCRA 1986, UJI § 13–1632 (1991 Repl. Pamp.). Brasher has presented no evidence to support this element of his cause of action. Brasher points to five separate representations made to him by Defendants that he would not be discriminated against because of his disability. However, these representations were made one year or more prior to the alleged discrimination. There is no evidence in the record that at the time these statements were transmitted to Brasher that the speaker could not have reasonably believed in their truthfulness. Consequently, Defendants are entitled to judgment as a matter of law on this claim and it should be dismissed.

### E. Negligent Retention, Supervision and Training.

In Count Six, Plaintiff–Intervenor alleges that Defendants TMS and MTS knew or should have known that certain employees' discriminatory attitude toward people with AIDS created a foreseeable risk of harm to others, including other employees with AIDS, such as Brasher, and that despite this foreseeable risk, TMS and MTS negligently failed to supervise, train, or remove these employees.

■■■ An employer may be liable in tort for negligent retention, supervision, and training for the wrongful conduct of an employee even though the employer is not responsible for such acts under the doctrine of respondeat superior. *Pittard v. Four Seasons Motor Inn, Inc.,* 101 N.M. 723, 729, 688 P.2d 333 (Ct.App.), *cert. quashed,* 101 N.M. 555, 685 P.2d 963 (1984); *Valdez v. Warner,* 106 N.M. 305, 742 P.2d 517 (Ct.App.), *cert. denied,* 106 N.M. 353, 742 P.2d 1058 (1987). In order to support a claim for negligent hiring and retention, there must be evidence that the employee was unfit, considering the nature of the employment and the risk he posed to those with whom he would foreseeably associate, and that the employer knew or should have known that the employee was unfit. *Valdez,* 106 N.M. at 307, 742 P.2d 517 (citing, RESTATEMENT (SECOND) OF AGENCY § 213 cmt. d (1958) and *F & T Co. v. Woods,* 92 N.M. 697, 594 P.2d 745 (1979)).

■■ I conclude Plaintiff-intervenor has presented sufficient factual evidence from which a jury could conclude that Defendants failed to effectively train and supervise the employees of the Fourth Street salon from the time of the July 18, 1994, meeting through the time of Brasher's termination in November, 1994. However, Plaintiff–Intervenor has failed to create a triable issue of fact as to whether Defendants' alleged negligence in training, supervising, or retention of the Fourth Street employees after July 18, 1994, caused the injuries complained of by Brasher. Brasher never returned to the Fourth Street salon following the July 18, 1994, meeting. Plaintiff–Intervenor's claim lies against Defendants, if at all, not for their alleged failure to train, supervise, or dismiss certain Fourth Street employees, but rather in their allegedly improper decision to discriminate against Brasher. Consequently, Defendants are entitled to judgment as a matter of law on this claim and this claim should be dismissed.

### F. Prima Facie Tort.

■■■ To constitute a prima facie tort, the tort-feasor must act maliciously, with the intent to cause injury, and without justification or with insufficient justification. *Schmitz v. Smentowski,* 109 N.M. 386, 395, 785 P.2d 726 (1990). The elements of prima facie tort adopted in *Schmitz* were (1) an intentional, lawful act by defendant; (2) an intent to injure the plaintiff; (3) injury to the plaintiff; and, (4) the absence of justification or insufficient justification for the defendant's acts. *Id.* at 394, 785 P.2d 726.

■ In Count Seven of Plaintiff's complaint-in-intervention, Brasher alleges that: 1) Defendants intentionally injured Brasher by engaging in and encouraging others to engage in a malicious discussion of his condition, by refusing to permit him to return to his home base, and by refusing to extend his leave of absence by 30 days; 2) Defendants intended, or at least knew that such acts would cause harm to Brasher; 3) these acts did harm Brasher; and, 4) there is no justification for Defendants' behavior.

Defendants seek dismissal of Brasher's prima facie tort claim under three theories. First, Defendants argue that prima facie tort is inapplicable in an at-will employment situation, citing for support *Schmitz* and *Yeitrakis v. Schering–Plough Corp.*, 804 F.Supp. 238 (D.N.M.1992). Next, Defendants claim the acts Brasher alleges form the basis of his prima facie tort claim are Defendants' allegedly *unlawful* violations of the ADA. Prima facie tort does not encompass unlawful conduct on the part of a defendant, only lawful conduct done with the intent to injure the plaintiff. Finally, Defendants argue their actions were not intended to harm Brasher, and were otherwise justified.

In *Schmitz,* the court held that prima facie tort should not be used to evade stringent requirements of other established doctrines of law. *Id.* at 398, 785 P.2d 726. In *Yeitrakis,* the late Judge Burciaga applied the reasoning outlined in *Schmitz* and refused to apply prima facie tort to the alleged wrongful termination of an employee in an at-will situation. *Yeitrakis,* 804 F.Supp. at 249. I cannot distinguish *Yeitrakis* and find its reasoning persuasive. Indeed, the *Schmitz* court also opined that prima facie tort should not be extended to provide a remedy to the employment-at-will doctrine. *Schmitz,* 109 N.M. at 396, 785 P.2d 726. Plaintiff–Intervenor, in spite of the arguments advanced, seeks to hold Defendants liable under prima facie tort for intentionally harmful conduct associated with Brasher's alleged wrongful discharge. To permit Plaintiff–Intervenor to advance such a claim under the guise of prima facie tort would emasculate the doctrine of employment terminable at will—a position the *Schmitz* court clearly rejected.

Therefore, I conclude Defendants are entitled to judgment as a matter of law on Plaintiff–Intervenor's claim of prima facie tort and this claim should be dismissed.

An order in accordance with this memorandum opinion will be entered.

### ORDER

**THIS MATTER** comes before the Court on 1) Defendants MTS and TMS' Motion for Summary Judgment as to Plaintiff's and Plaintiff–Intervenor's Claims for Discrimination and Retaliation Based on the ADA (Docket No. 182); 2) Defendants' Motion for Summary Judgment as to all Common Law Counts by Plaintiff–Intervenor Brasher (Docket No. 189); and, 3) Plaintiff's Motion to Strike Defendants' Reply or, Alternatively, Permission to File Surreply (Docket No. 271). In accordance with the Court's memorandum opinion filed on July 26, 1996:

**IT IS ORDERED** as follows:

I. Defendants MTS and TMS' Motion for Summary Judgment as to Plaintiff's and Plaintiff–Intervenor's Claims for Discrimination and Retaliation Based on the ADA is denied;

2. Defendants' Motion for Summary Judgment as to all Common Law Counts by Plaintiff–Intervenor Brasher is **granted,** in part, and summary judgment is entered on behalf of Defendants on Plaintiff–Intervenor's claims for civil conspiracy, intentional infliction of emotional distress, negligent misrepresentation, negligent retention, supervision and training, and prima facie tort. Those claims are, therefore, **dismissed** with prejudice. Defendants' motion for summary judgment on Plaintiff–Intervenor's claim for retaliatory discharge is **denied.**

3. Plaintiff's Motion to Strike Defendants' Reply or, Alternatively, Permission to File Surreply is **denied.**