2002 OK CIV APP 45

**MAZZIO'S CORPORATION,**
**Plaintiff/Appellee,**

v.

**Thomas L. BRIGHT and Robin Burch,**
**Defendants/Appellants.**

**No. 95701.**

Court of Civil Appeals of Oklahoma,
Division No. 4.

March 12, 2002.

Thomas D. Hird, Phil R. Richards, Richards & Connor, Tulsa, OK, for Plaintiff/Appellee.

Thomas L. Bright, Tulsa, OK, for Defendants/Appellants.

RONALD J. STUBBLEFIELD, Judge.

¶ 1 This is an appeal from judgment on jury verdict entered in favor of Plaintiff, Mazzio's Corporation (Mazzio's), in an action alleging malicious prosecution in relation to the filing and prosecution of lawsuits in state and federal court by Defendant attorney Thomas Bright. The underlying lawsuits were filed against Mazzio's by Bright on behalf of his client, Defendant Robin Burch, who allegedly had suffered an unwanted sexual advance from a co-employee at Mazzio's. The jury returned a unanimous verdict awarding damages to Mazzio's, against Bright, for $23,500 actual damages and $25,000 punitive damages.

¶ 2 Although Bright's client, Burch, was a party defendant below and is named as a party appellant, the record reveals that she did not play an active role in the litigation. Apparently, Burch did not cooperate during the litigation and, as a result of her failure to appear as ordered at deposition, the trial court entered default judgment against her as a sanction. However, at the conclusion of trial, the trial court, sua sponte, vacated judgment against Burch based on its finding that she had acted honestly, on advice of counsel, after her fair disclosure of all the facts that she knew or reasonably should have known concerning the case.

## BACKGROUND

¶ 3 We shall recite the undisputed facts as found by the United States District Court for the Northern District of Oklahoma on the parties' motions for summary judgment in one of the underlying actions hereafter discussed. Mazzio's employed Burch between June 1, 1994, and June 10, 1994. Burch and other employees of Mazzio's were required to attend a driver's safety meeting on June 8, 1994. In accordance with Mazzio's suggestion that employees car-pool to this meeting, Burch rode with Larry Brooks, a co-worker she had met a few days earlier.

¶ 4 During the safety meeting, Brooks sat next to Burch, placing his arm on the back of her chair and rubbing her arm. Burch became uncomfortable and moved her chair to create distance between herself and Brooks. Then, as Brooks was driving Burch home from the meeting, he placed his hand on her hand. She did not remove her hand and patted his hand in a friendly gesture. When they arrived at Burch's home, Brooks grabbed her and attempted to kiss her. Burch dodged him and resisted, but Brooks was able to kiss her on the chin. After she left Brooks' vehicle and he had departed, Burch contacted her manager to complain of Brooks' conduct. The manager told Burch he would take care of the problem.

¶ 5 On the day following the incident, Burch's manager requested her to meet with an area general manager for Mazzio's. After hearing Burch describe the incident, the area general manager and a security supervisor for Mazzio's interviewed Brooks later that day. During this interview, Brooks admitted to kissing Burch, and his employment with Mazzio's was terminated immediately. Later that evening, the area general manager informed Burch that Brooks had been terminated from his employment with Mazzio's. Burch did not request any further action from the area general manager and indicated her satisfaction with the termination.

¶ 6 However, on the next day, June 10, 1994, Burch resigned from her employment with Mazzio's. She stated that, when Mazzio's would not transfer her to another store location, she decided to resign because she feared the other employees she and Brooks had worked with would resent her. Then, one day later, Burch contacted the area general manager and asked for her job back. Burch's emotional display prompted the area general manager to discuss the possibility of Burch's rehire with other Mazzio's superviso-

ry personnel. The area general manager subsequently denied Burch's request.

## PROCEDURAL HISTORY

¶ 7 Attorney Bright filed the first action on behalf of Burch and against Mazzio's on July 22, 1994, in the District Court of Tulsa County. The petition alleged four grounds for relief seeking actual and punitive damages: (1) retaliation and intentional violation of Oklahoma public policy; (2) intentional infliction of emotional distress; (3) assault; and (4) malicious disregard of the known rights of Burch. Mazzio's sought summary judgment on several grounds and the parties extensively briefed the issues. The trial court found no substantial controversy as to material facts and entered judgment in favor of Mazzio's in this first action on October 24, 1995.[1] Burch did not appeal.

¶ 8 In the interim, on July 27, 1995, Burch had received a "right to sue" letter from the Equal Employment Opportunity Commission (EEOC). Bright filed a second suit in the District Court of Tulsa County on October 18, 1995, alleging four claims arising under Title VII of the Civil Rights Act of 1964:(1) intentional discrimination, harassment, or retaliation; (2) intentional infliction of emotional distress; (3) assault; and (4) malicious disregard of her known rights. The facts underlying these claims were identical to those of the first Tulsa County lawsuit, except that Burch now pled them under Title VII. Mazzio's removed this second action to the United States District Court for the Northern District of Oklahoma.

¶ 9 In federal court, both Mazzio's and Burch filed motions for summary judgment. In its motion, Mazzio's asserted that principles of res judicata arising from the October 1995 Tulsa County judgment in its favor operated to preclude Burch from further litigation of her claims. Alternatively, Mazzio's asserted that it was entitled to summary judgment because Burch had failed to establish a prima facie case under Title VII. In her motion, Burch claimed that she was enti-tled to summary judgment on the issue of Mazzio's liability.

¶ 10 On July 2, 1996, the federal court entered a ten-page order detailing the facts and its reasons for finding that Burch was "precluded from litigating the present lawsuit under principles of res judicata, or collateral estoppel." The federal court found that the evidence and arguments advanced under both state and federal law claims in the two lawsuits filed by Bright on behalf of Burch were indistinguishable-that the two lawsuits met the "same evidence test" and had identity of subject matter.

¶ 11 Although the federal court noted that its findings on preclusion issues disposed of Burch's case, it nevertheless went on to discuss the issue of whether Burch had stated a prima facie claim under Title VII. The federal court stated:

> After examining the parties' undisputed facts, the Court finds that Burch's claims for sexual harassment and wrongful discharge are both without merit.
>
> ... Mazzio's investigated the harassment the day after it received the complaint from Burch. When it confirmed Burch's allegations, Mazzio's immediately terminated Brooks. Consequently, as a matter of law, Burch's claim must fail because the Court finds that Mazzio's actions constituted a prompt and reasonable response to her complaint.
>
> ... Burch elected to resign from her position after Mazzio's eliminated the challenged conduct by terminating Brooks. Consequently, the Court finds that no reasonable person can conclude that Burch had no choice but to quit. Relatedly, because the undisputed facts establish that Burch quit her job, Burch's claim that she was terminated must also fail. (Footnote omitted.)

The federal court granted summary judgment in favor of Mazzio's. Burch did not appeal this summary judgment, and Bright terminated his representation of her.

---

1. The trial court noted in its order that Burch had filed a second Tulsa County action on October 18, 1995, an action which we shall discuss below. The trial court stated that it "does not have before it, and makes no ruling upon the justiciability or merits of the claim set forth within [that] case."

¶ 12 Mazzio's filed the current action against Burch and Bright on November 5, 1996, in Tulsa County District Court. Mazzio's alleged in its petition that (1) it was granted summary judgment against Burch in her first Tulsa County action one week after Burch had filed her second, identical Tulsa County action; (2) Burch continued to prosecute the second action and, after the second action had been removed to federal court, it was also resolved in Mazzio's favor and against Burch; (3) Burch and Bright brought each action against it maliciously, without probable cause and for purposes of harassment; and (4) as a result of their malicious institution of the actions, Burch and Bright had caused Mazzio's to incur attorney fees, expenses and other economic loss.

¶ 13 The matter proceeded to trial. The trial court overruled Bright's demurrer to Mazzio's evidence as well as the motions for directed verdict made by each party. The jury returned a unanimous verdict in favor of Mazzio's and against Bright, awarding damages in the amount of $23,511.81. Based on its finding that Bright had acted intentionally and with malice, the jury also awarded Mazzio's $25,000 in punitive damages.

¶ 14 Bright filed a motion for new trial and/or in the alternative for judgment notwithstanding the verdict. The trial court denied the motions, and Bright appeals.

## STANDARD OF REVIEW

¶ 15 This court will not disturb a jury's verdict, or trial court judgment based thereon, where there is any competent evidence reasonably tending to support the verdict. *Florafax Int'l, Inc. v. GTE Mkt. Resources, Inc.*, 1997 OK 7, 933 P.2d 282. Motions for new trial are addressed to the sound discretion of the trial court, and we will not reverse the denial of a motion for new trial in the absence of a showing of an abuse of that discretion. *Martinez v. Moffat*, 1994 OK CIV APP 133, ¶ 4, 890 P.2d 988, 990. In considering a motion for judg-

ment notwithstanding the verdict, the Trial Court does not consider conflicting evidence favorable to the movant and properly denies such motions where there exists a reasonable inference which reasonable persons could choose to accept or reject. *Id.*; *Sadler v. T.J. Hughes Lumber Co., Inc.*, 1975 OK CIV APP 30, ¶ 16, 537 P.2d 454, 458.

## PROCEDURAL ISSUE

¶ 16 Bright raises seven propositions of error in his brief in chief, which are basically the same as the grounds set forth in the briefs in support of his motion to dismiss and his various post trial motions. In its response brief, Mazzio's directs our attention to several instances of Bright's failure to follow the Oklahoma Supreme Court Rules-including Bright's failure to support his appellate propositions of error with argument and authority in his brief, citation of an unpublished case, failure to correctly cite quoted case material; and failure to support factual assertions with citations to the evidence of record.[2] Mazzio's also points to instances where Bright has purported to cite to the evidence of record in support of his assertions, but the evidence is either misstated or taken out of context. Because it claims Bright has committed such significant errors and omissions of both law and fact in his brief in chief, Mazzio's requests this court to dismiss the appeal in its entirety.

¶ 17 In an instance of failure to comply with the Oklahoma Supreme Court Rules, this court does have the authority, pursuant to the rules of general application to all appeals, to "dismiss a cause, reverse or affirm the judgment appealed, render judgment, strike a filing, assess costs or take any other action it deems proper." Okla. Sup.Ct. R. 1.2, 12 O.S. Supp.2000, ch. 15, app. 1. See also Rule 1.1(b). In this instance, we are not inclined to impose the ultimate sanction of dismissal as urged by Mazzio's. However, for the following reasons, we do find it appro-

---

2. Okla. Sup.Ct. R. 1.11(f), 12 O.S. Supp.2000, ch. 15, app. 1, provides that "argument and authorities in support of each proposition must follow the statement of the proposition." Rule 1.11(k) provides that "[a]rgument without supporting

authority will not be considered." Rule 1.200(b)(5) prohibits citation of unpublished opinions in "any brief or other material presented to any court."

priate to strike and deny consideration of portions of Bright's brief.

¶ 18 Instead of complying with the requirements of Rule 1.11(f), Bright improperly attempts to support the majority of his appellate propositions of error by "incorporation by reference" of argument and authority contained in his pre-trial and post trial motions and briefs. For example, his first proposition of error reads as follows:

> **PROPOSITION I: The District Court was in error to deny defendant/appellants' motion to dismiss based on pre-emption arguments.**
>
> The Tulsa County District Court should have granted defendant/appellants' 7–24–00 motion for judgment notwithstanding the verdict for the same reasons that the defendant/appellants stated in their 3–3–98 motion to dismiss. Defendant/appellants' 3–3–98 motion to dismiss stated federal and state preemption/waiver defenses. When those federal and state preemption/waiver defenses are properly taken into account, Mazzio's failed to state a claim for which relief can be granted.
>
> The arguments and other authority stated in defendant/appellants' 3–3–98 motion to dismiss are hereby restated and incorporated herein in support of this appeal for defendant/appellants. The District Court denied this 3–8–98[sic] motion to dismiss in its 4–13–98 decision. In its 11–27–00 order, the District Court also denied defendant/appellants' motion for JNOV concerning its earlier 4–13–98 denial. (Footnotes with citations to journal entries, orders and briefs omitted.)

Bright continues this "incorporation by reference" briefing method in Propositions IV, V, VI and VII of his brief in chief.

¶ 19 In his reply brief, Bright claims that the Oklahoma Supreme Court Rules do not expressly prohibit incorporation by reference of briefs submitted to the lower court, and, therefore, it must be allowed. We do not agree. Rule 1.11(f) clearly states that the contentions of the parties "must be set forth in separate propositions," and "[t]he argument and authorities in support of each proposition must follow the statement of the proposition." The rule unambiguously commands that the argument and authority be part of the content of the brief, and this requirement applies to "[b]riefs in every proceeding."

¶ 20 There is another reason why we feel it appropriate to deny consideration of part of Bright's brief. As written, Bright's brief in chief is thirty pages, the maximum allowed by Rule 1.11(b). If the voluminous materials from the trial court record are allowed to be incorporated by reference, the brief would far exceed the thirty-page limitation. However, prior to filing his brief, Bright did not file an application to exceed this page limitation which, in all likelihood, would not have been granted by the Oklahoma Supreme Court.[3] We will not condone this attempt to circumvent the page limit for briefs set forth in Rule 1.11(b).

¶ 21 Accordingly, Propositions I, IV, V, VI and VII of Bright's brief are stricken. We shall consider only Propositions II and III of Bright's brief.[4]

### DISCUSSION OF ISSUES

■ ¶ 22 In Proposition II of his brief, Bright makes this assertion: "Attorneys cannot be sued for malicious prosecution absent evidence of actual malice." He does not cite any specific controlling authority for this assertion,[5] and instead goes on to discuss what

---

**3.** Okla. Sup.Ct. R. 1.11(b), 12 O.S. Supp.2000, ch. 15, app. 1, states that "[s]uch an application should not be filed as a matter of course and will not be granted absent a showing of good cause justifying departure from the limitations of this rule."

**4.** This result may seem harsh, but we note a similar instance where another division of this court concluded that the entire brief should be stricken, due to impracticability of determining which thirty pages of the brief it should consider.

*In re Estate of Ray*, 1990 OK CIV APP 73, 804 P.2d 458.

**5.** In a footnote, Bright cites an unpublished decision of this court, *Monroe v. Ogunseye*, No. 91,-167 (Okla.Ct.App., Sept. 15, 1998). In that case, this court found that a claim of malicious prosecution against an attorney who prosecutes a claim must be based on malicious motive. That is in keeping with the rule stated in *Reeves v. Agee*, 1989 OK 25, ¶ 21, 769 P.2d 745, 755, and *RESTATEMENT (SECOND) OF TORTS* § 674

he refers to as the "murky area of employer liability for harassment by its employees." Bright has failed to present anything for us to review in this regard.

¶ 23 Bright also claims in Proposition II that, as a result of the "ever changing body of state and federal law on workplace harassment and retaliation," he offered additional jury instructions that the trial court should have accepted to supplement the Oklahoma Uniform Jury Instructions and assist the jury in understanding an attorney's duty to his client. Once again, Bright fails to cite in his brief specific authority in regard to this proposition. He merely refers us to the "*Restatement (Second) Torts* comments," without directing us to any specific section of that multi-volume work. He also refers us to his 24–page "5–31–00–2nd trial brief" filed below, which, for reasons already given, we decline to consider.

¶ 24 Bright's briefing failure severely limits our ability to review any alleged error regarding instructions given or refused. An equally crucial omission at trial further restricts our review-failure to follow the statutorily mandated procedure for preserving objections to the giving or refusal of instructions. *See 12 O.S.1991 § 578* (requiring dictation into the record the number of the particular instruction that was requested, refused and excepted to or given and excepted to). Consequently, we are limited to reviewing the instructions actually given, only to determine if they are free from fundamental error. *Sullivan v. Forty–Second West Corp.*, 1998 OK 48, ¶ 5, 961 P.2d 801, 802; *Sellars v. McCullough*, 1989 OK 155, ¶ 6, 784 P.2d 1060, 1062.

¶ 25 On Bright's motion, we recently entered an order on January 18, 2002, allowing supplementation of the appellate record with the jury instructions actually given. We have reviewed those instructions and conclude that they are free from fundamental error.

¶ 26 Bright's Proposition III consists of two parts. He first claims that the jury verdict was against the weight of the evidence because there was uncontested evidence showing probable cause for the public policy tort and Title VII retaliation in the two prior lawsuits. Next, he claims that there was uncontested evidence showing probable cause for the remaining claims made against Mazzio's in those two lawsuits-assault and battery, intentional infliction of emotional distress, and sexual harassment-as well as probable cause for continuing the second lawsuit in federal court after the grant of summary judgment in the first state court case.

¶ 27 It is true that the presence of probable cause would defeat Mazzio's claim of malicious prosecution. *Reeves v. Agee*, 1989 OK 25, ¶ 12, 769 P.2d 745, 752. However, there are serious flaws in Bright's arguments in support of this proposition.

¶ 28 In making his probable cause arguments, Bright attempts to re-litigate the prior actions by attacking the propriety of the prior state and federal court summary judgments as to both findings of fact and conclusions of law. Bright points to various legal theories that he insists mandate a finding of probable cause, but those legal theories for proceeding against *Mazzio's* do not stand supported by the *undisputed operative facts*—facts that Bright was first made aware of by Burch, then by Mazzio's corporate counsel, and which were then found to be substantially the same by the federal court in its summary judgment order. The latter order became final, barring Bright from asserting that the "facts" are different than those set forth by the federal court in the body of its order. *See Barker v. State Ins. Fund*, 2001 OK 94, ¶¶ 10–13, 40 P.3d 463.[6]

comment d (1977). In this instance, there was evidence showing malicious intent on the part of Bright.

6. The most important evidence cited by Bright is the proximity of Burch's "termination" to the report of sexual harassment, and the fact that she was "taken off the work schedule" by Mazzio's.

However, the uncontroverted evidence was that there was no termination of Burch by Mazzio's, because she voluntarily resigned from her employment. Upon her resignation, it certainly was reasonable that Mazzio's would remove her from the work schedule.

¶ 29 Moreover, Bright overlooks evidence of record from which the jury reasonably could have inferred that he did act with malice—evidence from which it could be inferred that he recognized very well the legal/factual failings of his clients claim, but proceeded because he primarily was concerned with extracting a settlement from Mazzio's, which would include his attorney fee. After his initial two and one-half hour interview with Burch on June 13, 1994, Bright sent a "demand letter" to Mazzio's and began drafting the petition for state law claims. Bright indicated in the letter that Burch would be willing to settle her claims for assault, battery, sexual harassment and constructive discharge if several demands were met. These demands included:

1. A letter of apology from management for the emotional distress and intentional discrimination inflicted on her;

2. Adequate assurances that she will not suffer retaliation by Mazzio's due either to this demand or her employment with Mazzio's;

3. Adequate assurance that Ms. Burch will not be retaliated against for this action by other employees at Mazzio's;

4. Purging of her personnel file of any adverse material placed in that file prior to the date Mazzio's accepts this offer to settle;

5. A good letter of reference for anything that has occurred prior to the date Mazzio's accepts this offer to settle;

6. A lump sum payment to compensate Ms. Burch for her release of any claims, (the exact amount of which to be set in negotiations with the undersigned); and

7. Reimbursement of reasonable attorney fees and court costs.

Mazzio's corporate counsel, Bradford Williams, testified that, when he received a copy of the demand letter, he was already aware of nearly all of the facts surrounding the incident, including the termination of Brooks, Burch's resignation and her request to be rehired. He described the only facts he was not aware of as "exculpatory"—such as the fact that Burch had patted Brooks' hand in the car prior to the kiss attempt. Williams testified that, when he called Bright to discuss the matter, Bright's attitude made it clear to him that Bright "was totally adamant about coming after our company."

¶ 30 On June 29, 1994, Williams sent Bright a multi-page factual investigation report and legal memorandum, in an attempt to show him why, in regard to Mazzio's Corporation, Burch's claim for damages was without legal basis. The material facts as outlined by Williams in his letter were substantially the same as those later found to be uncontroverted by the federal court in its summary judgment order.

¶ 31 Bright filed the first lawsuit against Mazzio's on July 22, 1994, including a specific claim for reduction of earnings and emotional distress in excess of $250,000 and a punitive damage claim for $2 million. However, he never sued Brooks for assault and battery, although Burch told him she wanted to sue Brooks. In this regard, Bright testified: "I probably told her she could file a suit against Brooks, but I would not represent her because it would not do any good for her. I would not be compensated for it."

## CONCLUSION

¶ 32 We find there is competent evidence in the record that reasonably tends to support the jury's verdict in favor of Mazzio's on its claim for malicious prosecution. The propositions of error that Bright has preserved and properly presented for our review are not availing of reversal. He has failed to demonstrate that the trial court abused its discretion in denying his post-trial motions. Accordingly, we affirm the judgment of the trial court.

¶ 33 AFFIRMED.

¶ 34 REIF, C.J., and TAYLOR, P.J., concur.