2010 OK CIV APP 82

Tracy TARRANT, Plaintiff/Appellee,

v.

GUTHRIE FIRST CAPITAL BANK, an Oklahoma corporation, Defendant/Appellant,

and

Tom Holder and Randy Holder, Defendants.

Nos. 106,361, 106,630.

Court of Civil Appeals of Oklahoma, Division No. 2.

July 27, 2010.

Robert S. Glass, R. Charles Wilkin III, Amy E. Hampton, Chad M. Neuens, Glass Wilkin, PC, Tulsa, OK, for Appellee Tracy Tarrant.

John N. Hermes, Rodney K. Hunsinger, McAfee & Taft, A Professional Corporation, Oklahoma City, OK, for Appellant First Capital Bank.

JOHN F. FISCHER, Presiding Judge.

¶ 1 Appellant First Capital Bank appeals from a judgment entered by the district court in favor of Appellee Tracy Tarrant. Based on our review of the applicable law, we reverse and remand for further proceedings.

## BACKGROUND

¶ 2 The facts relevant to this dispute concern Tarrant's forty-five percent ownership in the "Alice Fisher" oil well, and transactions concerning that interest between Tarrant and the Bank. The Bank owned several loans made to Tarrant and his family, including a loan secured by a mortgage on the well. In 1998, production at the well was temporarily halted due to a pipe failure in the well bore. After Capstone Oil and Gas became operator of the well, it sought to rework the well and reestablish production. Capstone, also a Bank customer, estimated that the cost of this project would be approximately $110,000, and proposed an "Authority for Ex-

penditure" (AFE) for this amount to the other well owners. Owners who agreed to Capstone's proposal were required to pay their pro-rata share of the cost of the project. Capstone paid the cost for owners who did not agree. However, it would deduct 300 percent of all costs advanced on behalf of any non-consenting owner from the owner's future share of production if the project was successful. Although Tarrant consented to the project and agreed to pay his $49,800 share of the project, his initial payment was only $35,800. The record indicates that Tarrant had no cash or credit available to pay any additional costs.

¶ 3 Capstone then submitted a supplemental AFE, estimating that the cost of the project would be $260,000. Tarrant objected. At a meeting called by the Bank, Tarrant agreed to proceed. The Bank then presented Tarrant with a supplemental operating agreement it had prepared and which Capstone had previously signed. Pursuant to this agreement, Tarrant would pay the remaining $14,000 due on the first AFE but he would not participate in any additional workover costs. Capstone would retain a percentage of Tarrant's future income from the well, based on his non-consent to the additional expenses and the penalties applicable to those costs, until this obligation was satisfied. Tarrant contends that he signed this supplemental agreement on the advice of the Bank, or because of pressure or threats from Bank, including the claim that Capstone would otherwise stop work on the well.

¶ 4 Capstone's rework of the well was successful, but its costs substantially exceeded the supplemental AFE. One Bank document estimates the final cost at $744,000, over six times the original estimate. As a result, Tarrant ultimately owed Capstone approximately $840,000 in costs and non-consent penalties. Although Tarrant's interest in the well was worth between $900,000 and $1,000,000, the amended operating agreement allowed Capstone to retain $12,000 of Tarrant's share of monthly production to pay the costs and non-consent penalties. Capstone paid the remaining $2,000 directly to the Bank to repay Tarrant's debt to the Bank. Consequently, Tarrant was unlikely to

receive any income from the well for approximately eight years.

¶ 5 Tarrant questioned the legitimacy of Capstone's workover charges and its payment to the Bank of amounts not retained by Capstone. According to Tarrant, Bank proposed to Capstone that it buy Tarrant's interest in the well, suggested a price of $150,000, and represented to Tarrant that Longhorn Services had made an offer to buy his interest in the well without disclosing that Longhorn was a division of Capstone. Tarrant refused to sell.

¶ 6 In May 2004, Tarrant sued Capstone for fraud. In February 2005, the Bank wrote to Tarrant informing him that Capstone had offered to purchase the loans secured by the Tarrant family homes, vehicles and property, implying that Capstone intended to foreclose the loans during the litigation. Tarrant contends that Capstone made no such offer, and that Bank fabricated this offer to discourage him from continuing the litigation. In June 2005, the district court granted Tarrant's motion for summary judgment against Capstone. A jury later determined his actual and punitive damages to be approximately $7,200,000.[1]

¶ 7 Tarrant alleges that, in retaliation for "exposing Capstone's fraud," Bank foreclosed on all the Tarrant family loans. Tarrant filed suit against Bank in June 2005, asserting several theories of recovery. The pretrial conference order recites that Tarrant sought recovery for conspiracy to commit unlawful acts; breach of fiduciary duty; negligence; bad faith and prima facie tort. At trial, the district court's instructions to the jury on these theories included prima facie tort.[2] The district court gave the prima facie tort instruction over Bank's objection. The Bank also moved for a directed verdict at the close of evidence, which the court denied. The jury returned a general verdict of $1,350,000 in favor of Tarrant for actual and punitive damages. Bank filed motions for judgment notwithstanding the verdict, and for a new trial. In its motion for new trial, Bank argued, among other issues, that the district court erred in giving the prima facie tort instruction. The district court denied these motions and entered judgment for Tarrant. Bank appeals.

## STANDARD OF REVIEW

¶ 8 "Fundamental error occurs when the trial court does not accurately instruct the jury on the law." *Taliaferro v. Shahsavari*, 2006 OK 96, ¶ 25, 154 P.3d 1240, 1248. "Where a jury is instructed on more than one issue and error affects one of the issues, 'the error affecting one issue or theory in a case will be regarded as prejudicial where it is impossible to determine upon which of the two issues or theories the jury based its decision.'" *Hightower v. Kansas City S. Ry. Co.*, 2003 OK 45, ¶ 8, 70 P.3d 835, 840 (citing *Bredouw v. Jones*, 1966 OK 93, ¶ 32, 431 P.2d 413, 420).

## ANALYSIS

¶ 9 Bank argues that Oklahoma does not recognize the prima facie tort theory of recovery. Because we find the prima facie tort instruction constitutes fundamental error re-

---

1. This Court subsequently overturned the verdict against Capstone, finding that the district court had improperly applied the summary judgment standard. Before the case went to trial a second time, Tarrant and Capstone settled. Tarrant also settled a discovery sanction awarded against Randy and Tom Holder, two individuals associated with Capstone. Prior to that settlement, this appeal (Case No. 106,630) had been consolidated with the Holders' appeal of the sanctions issue in Case No. 106,361. The Holders' dismissal of their appeal after settlement leaves for this appeal only issues regarding Tarrant's judgment against the Bank.

2. The prima facie tort instruction requested by Tarrant and given by the district court provides:

Plaintiff alleges that Defendant conspired with Capstone to cause Plaintiff to enter into the second AFE and the Supplemental Agreement. A prima facie tort exists if Defendant acted in any of the following ways that caused damage to Plaintiff:
1. Defendant acted with the intent to injure Plaintiff, or
2. Defendant knew that plaintiff was in such a condition that Defendant's conduct would result in injury, and defendant wilfully disregarded the consequences of its actions, or
3. Defendant acted with malice towards plaintiff as would indicate a conclusion that its actions were in disregard of whatever harm might follow from its actions.

quiring remand, we do not address the other issues raised by Bank in this appeal.

## I. Prima Facie Tort

■ ¶ 10 Prima facie tort is defined by the Restatement (Second) of Torts §§ 870–874 (1979), as follows:

> One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability.

The Restatement's definition is "intended to serve as a guide for determining when liability should be imposed for harm that was intentionally inflicted, even though the conduct does not come within the requirements of one of the well established and named intentional torts." Restatement § 870 cmt. a. The Restatement requires a court to first apply a balancing test to decide if an intentional but not unlawful act should be considered a basis for tort liability.[3]

¶ 11 Although between eight and twelve states appear to have recognized this theory, litigation pursuant to the prima facie tort theory is concentrated in three states: New York, New Mexico and Missouri. New Mexico and Missouri apply essentially the same definition of prima facie tort:

> (1) an intentional, lawful act; (2) committed with the intent to injure the plaintiff; (3) causing injury to the plaintiff; and (4) the absence of justification for the injurious act.

*Schmitz v. Smentowski*, 109 N.M. 386, 785 P.2d 726, 736 (1990); *Porter v. Crawford &*
*Co.*, 611 S.W.2d 265, 272 (Mo.Ct.App.1980). New York applies the same rule but requires special damages:

> (1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful.

*Curiano v. Suozzi*, 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469 N.E.2d 1324, 1327 (1984).

¶ 12 Tarrant cites no Oklahoma case adopting the prima facie tort theory of recovery, and we find none. The term "prima facie tort" appears in no reported Oklahoma case before 1990. In 1985, the Oklahoma Bar Journal published a student article titled *The Prima Facie Tort Doctrine in Oklahoma*, 56 Okla. B.J. 1759. This article centers on four pre–1925 tort cases.[4] None of these cases uses the phrase "prima facie tort." The law student author argues, however, that the discussion in these cases of "intentional acts which do damage to another without just cause or excuse," coupled with an interpretation of Okla. Const. art. 2, § 6 and the 1921 Oklahoma damages statute, indicate a recognition of the prima facie tort theory in Oklahoma.

¶ 13 This student article was first cited in 1990 by the Tenth Circuit in *Merrick v. Northern Natural Gas Co., Div. of Enron Corp.*, 911 F.2d 426, 433 (10th Cir.1990):

> This broad theory of [prima facie] tort liability has been adopted in only a handful of states, including Oklahoma. *See Cressman, The Prima Facie Tort Doctrine in Oklahoma: Common Law Protection of Business From Unjustified Interference*, 56 Okla. B.J. 1759, 1759 (1985).

---

3. This test requires, among other factors, an assessment of competing societal interests, the degree of harm caused by the conduct, the actor's motive, and the relationship of the conduct to currently recognized torts. *See* Restatement § 870 cmts. c-j.

4. Three of these cases involved attempts to destroy a plaintiff's business by spreading false rumors regarding the plaintiff's reliability, reputation, and business practices. The courts described these acts in terms of "conspiring together to willfully and maliciously injure plaintiff in his profession and business without just cause or excuse." *Mangum Elec. Co. v. Border*, 1923 OK 547, ¶ 5, 222 P. 1002, 1005. These cases most closely mirror the modern tort theory of tortious interference with contract or advantageous business relationship. *See Wilspec Techs., Inc. v. DunAn Holding Group Co., Ltd.*, 2009 OK 12, ¶ 15, 204 P.3d 69, 74. The fourth case involved a landowner building a high wall on the edge of his property with the intent of shutting out light and air to an apartment building on the adjoining lot, and states the modern theory of "nuisance."

Nonetheless, the *Merrick* court refused to apply the prima facie tort theory to the facts in that case, and the Tenth Circuit later commented on *Merrick*'s observation that Oklahoma has adopted the theory.[5]

¶ 14 Nonetheless, after 1990, cases in which plaintiffs pled a prima facie tort theory of recovery began to appear in Oklahoma. Between 1990 and 1999, several unpublished decisions of this Court rejected the availability of the prima facie tort theory based on the specific facts of the case, but did not comment on whether Oklahoma recognized the theory. In 1999, the Oklahoma Supreme Court, in *Patel v. OMH Medical Center, Inc.*, 1999 OK 33, 987 P.2d 1185, stated:

> The expression "prima facie tort" does not appear ever to have been recognized in Oklahoma. For the view that the concept of prima facie tort has been applied in Oklahoma jurisprudence under limited circumstances, *see Merrick v. Northern Natural Gas Co.*, 911 F.2d 426 (10th Cir.1990).

*Id.* at n. 2, 987 P.2d at 1190 n. 2. After 1999, unpublished cases from this Court have generally cited *Patel* as rejecting the application of the prima facie tort theory in Oklahoma.[6]

¶ 15 It is clear from *Patel* that the term "prima facie tort" had not been previously recognized in Oklahoma, and that the theory had not been adopted with respect to acts constituting spoliation of evidence, or as a vehicle to provide tort damages for perjury or other litigation-related misconduct. *Id.* at ¶¶ 44–45, 987 P.2d at 1202. Although *Patel* does not specifically hold that the prima facie tort theory of recovery is unavailable in any

other circumstances, it certainly did so with respect to the facts before the Court in that case. Nonetheless, until the Supreme Court expressly adopts the prima facie tort theory of recovery, we are unwilling to do so. Therefore, we find it was error to instruct the jury with respect to that theory.

## II. The Prima Facie Tort Instruction Requires Reversal

■ ¶ 16 Tarrant argues that, irrespective of any error in the prima facie tort instruction, the verdict and judgment should be upheld, pursuant to *Mazzio's Corp. v. Bright*, 2002 OK CIV APP 45, ¶ 15, 46 P.3d 201, 204 ("This court will not disturb a jury's verdict, or trial court judgment based thereon, where there is any competent evidence reasonably tending to support the verdict."). Although the principle in *Mazzio's Corp.*, relied on by Tarrant is a correct statement of the law, it is not the only principle applicable in this case. A more complete statement is found in *Florafax International, Inc. v. GTE Market Resources, Inc.*, 1997 OK 7, ¶ 3, 933 P.2d 282, 287. "Where such competent evidence exists, and no prejudicial errors are shown in the trial court's instructions to the jury ... the verdict will not be disturbed on appeal."

■ ¶ 17 Although we review jury instructions in their entirety, the applicable standard of review requires not only analysis of the accuracy of the statement of law, but also the applicability of the instructions to the issues in the case. *Johnson v. Ford Motor Co.*, 2002 OK 24, ¶ 16, 45 P.3d 86, 92–93. Further, as in this case, when a jury is

---

5. In *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 335 F.3d 1161, 1167 (10th Cir. 2003), the Tenth Circuit stated: "Cardtoons' only authority for the existence of [a prima facie tort] is an opinion of this court in which, in the absence of any authoritative Oklahoma case law and relying solely on an article in the Oklahoma Bar Journal, we stated that Oklahoma appeared to have adopted the tort. *See Merrick v. Northern Natural Gas Co.*, 911 F.2d 426, 433 (10th Cir. 1990).... Our cases are not binding on the Oklahoma courts with respect to Oklahoma law. Since our decision in *Merrick*, the Oklahoma Supreme Court has explained that "the expression 'prima facie tort' does not appear to have ever been recognized in Oklahoma."

6. See *Langlee v. ONEOK, Inc.*, Case No. 99,806, *slip op.* at 4 (March 30, 2004) ("Oklahoma has

not recognized prima facie tort actions ... Recognition of such a cause of action rests not with this Court acting as an error correcting Court, but rather with this State's Supreme Court."). *See also Selby v. Mid–Continent Casualty. Co.*, Case No. 101,214, *slip op.* at 4–5 (March 29, 2005) ("The Oklahoma Supreme Court has not recognized either spoliation of evidence or prima facie tort actions."); *Toolpushers Supply Co. v. Kris Agrawal*, Case No. 101,163, *slip op.* at 10–11 (August 29, 2006) ("Last, [plaintiff's] assertion that the trial court failed to recognize a "prima facie claim for deceit" in the counterclaim has no merit ... Oklahoma has not recognized prima facie tort actions ... Recognition of such a cause of action rests with the Supreme Court.").

instructed on more than one issue and error affects one of the issues, "the error affecting one issue or theory in a case will be regarded as prejudicial where it is impossible to determine upon which of the two issues or theories the jury based its decision." *Hightower*, 2003 OK 45 at ¶ 7, 70 P.3d at 840. *See also Bredouw*, 1966 OK 93 at ¶¶ 32–34, 431 P.2d at 420. Because a general verdict was rendered in this case, we are unable to determine whether the jury found Bank liable on Tarrant's prima facie tort theory, one of the four theories on which the jury was instructed.[7] As previously noted, "[f]undamental error occurs when the trial court does not accurately instruct the jury on the law." *Taliaferro*, 2006 OK 96 at ¶ 25, 154 P.3d at 1248. Consequently, instructing the jury on prima facie tort was prejudicial and requires reversal of the judgment entered in favor of Tarrant.[8]

## CONCLUSION

¶ 18 The Oklahoma Supreme Court has not previously recognized a theory of recovery based on prima facie tort, and we decline to do so in this case. Consequently, it was error to instruct the jury with respect to that theory. Because a general verdict was entered in this case, it cannot be determined whether the jury relied on the prima facie tort theory in rendering its verdict for Tarrant. Therefore, we find that Bank has demonstrated prejudicial error. The judgment of the district court in favor of Tarrant is reversed, and this case is remanded for further proceedings consistent with this Opinion.

7. Bank asked the district court to submit separate verdict forms to the jury specific to each of Tarrant's theories of recovery. The district court denied Bank's request.

8. In addition, Bank correctly argues that the instruction given incorrectly states the elements of a prima facie tort as defined in those jurisdictions that recognize the tort. The instruction is incompatible with the required elements of a prima facie tort claim. The states recognizing prima facie tort all require that the act triggering prima facie tort liability be otherwise lawful. Tarrant's requested instruction did not accurately state the law as adopted in those jurisdictions. *See Susskind v. Ipco Hosp. Supply Co.*, 49 A.D.2d 915, 915, 373 N.Y.S.2d 627 (1975) ("A cause of action based upon an alleged prima facie tort is

¶ 19 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

WISEMAN, C.J., and BARNES, J., concur.

insufficient when the basic allegations therein are the grounds for causes of action in 'traditional tort'...."). New York, the state with the oldest and best established prima facie tort doctrine, further requires "disinterested malevolence" as an element of a prima facie tort claim. *See Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir.1990) (explaining that, under New York law, the "touchstone [of a prima facie tort claim] is 'disinterested malevolence', meaning that the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm[;]" and that "motives other than disinterested malevolence, such as profit, self-interest, or business advantage will not suffice under the doctrine of prima facie tort.").